**STATE of Texas, Appellant,**

v.

**Tommy Reyes RODRIGUEZ a/k/a Tommy Reyes Rodriquez, Appellee.**

**No. 11–98–00206–CR.**

Court of Appeals of Texas, Eastland.

Dec. 16, 1999.

Kollin Shadle, James Eidson, Criminal Dist. Attorney's Office, Abilene, for appellant.

Ed Paynter, Law Offices of Ed Paynter, Abilene, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

The trial court granted appellee's pretrial motion to suppress on the ground of collateral estoppel. The State appealed. We reverse and remand.

### Background Facts

Appellee was charged with misdemeanor possession of marihuana in the county court at law. He was also charged in the district court with the felony offense of possession of cocaine with intent to deliver. Both charges stemmed from a single search warrant, and both charges were filed by the Taylor County District Attor-

ney. At a suppression hearing in the misdemeanor trial, the county court at law found that the affidavit supporting the search warrant was insufficient to establish probable cause. The State did not appeal the ruling, and the county court at law dismissed the case upon the State's motion. After the misdemeanor case was dismissed, the State then sought to prosecute the felony case in the district court. Appellee filed a collateral estoppel plea based on the county court at law's suppression order. Citing *State v. Brabson*, 976 S.W.2d 182 (Tex.Cr.App.1998), the district court found that collateral estoppel applied and dismissed the indictment.

Appellee argues that collateral estoppel, or issue preclusion, should apply because the double jeopardy clause protects against the State re-litigating the probable cause issue. Appellee relies upon *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Ex parte Tarver*, 725 S.W.2d 195 (Tex.Cr.App.1986); and *Dedrick v. State*, 623 S.W.2d 332 (Tex.Cr.App.1981).

The State contends that only two kinds of collateral estoppel have been applied to criminal cases: "criminal" collateral estoppel as recognized in *Ashe v. Swenson, supra*, and "administrative" collateral estoppel as recognized in *State v. Brabson, supra*, and *State v. Aguilar*, 947 S.W.2d 257 (Tex.Cr.App.1997). The State argues that criminal collateral estoppel does not apply because jeopardy had not attached in appellee's misdemeanor marihuana case. The State further argues that administrative collateral estoppel does not apply because administrative collateral estoppel requires an administrative agency acting in a "judicial" capacity as in *Brabson* and *Aguilar* or a judge engaged in a "judicial" decision in an administrative proceeding as in *Tarver.*

We disagree with the State's characterization of "administrative" collateral estoppel. The concept of "administrative" collateral estoppel requires that there be a judicial determination in the first proceed-

ing; consequently, we believe it is immaterial whether the first proceeding is criminal or civil. The question before us in this case is, therefore, whether collateral estoppel should be applied to a motion to suppress in a criminal case because of a judicial decision in an earlier suppression hearing involved in a separate trial.

We hold that collateral estoppel does not apply in this case because jeopardy did not attach in the misdemeanor case and that the misdemeanor suppression order did not determine an ultimate issue in the district court felony case. Collateral estoppel based upon civil law does not apply because the misdemeanor suppression order was not a final judgment.

### Collateral Estoppel Based on Double Jeopardy

■ In *Ex parte Ueno*, 971 S.W.2d 560 (Tex.App.—Dallas 1998, pet'n ref'd), the court addressed the question now before us. There, the police obtained two search warrants. Pursuant to one of the warrants, the police seized a controlled substance. The trial court granted the defendant's motion to suppress, and the State voluntarily dismissed the case. Later, the State realized that the second warrant could provide an independent basis for the search. The defendant was reindicted. He again filed a motion to suppress and argued that collateral estoppel prevented the State from re-litigating the issue of probable cause. The Dallas Court held that collateral estoppel was an aspect of double jeopardy and that collateral estoppel does not apply unless the defendant has been previously placed in jeopardy.

■ The Double Jeopardy Clause of the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The primary guarantee offered by this constitutional provision is protection against being subjected to successive prosecutions for the same criminal offense.

*Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). This aspect of the double jeopardy protection gives finality to the criminal process and "guarantees that an accused who has once stood the ordeal of criminal prosecution ... shall not be required to 'run the gauntlet' of trial again for the same alleged misconduct." See *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

In *Ashe v. Swenson, supra*, the Supreme Court recognized that the Double Jeopardy Clause also incorporates the doctrine of collateral estoppel. A group of masked men robbed six men playing poker in a home. The State unsuccessfully prosecuted Ashe for robbing one of the men. Subsequent to that acquittal, Ashe was convicted for the robbery of one of the other players. The Supreme Court found that, because the only issue in dispute in the first trial was whether Ashe had been one of the robbers, the rule of collateral estoppel precluded that issue from being relitigated in the second prosecution. The Court defined the collateral estoppel doctrine as providing that:

> [W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson, supra* at 443, 90 S.Ct. 1189. In the factual context of *Ashe*, the Court's reference to "a valid and final judgment" clearly referred to jeopardy having attached in the first prosecution.

For collateral estoppel to apply on a constitutional basis, the United States Supreme Court has added a second requirement to that of jeopardy having attached in the first proceeding. In the case of *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Supreme Court declined to apply collateral estoppel where the earlier acquittal did not

determine an "ultimate issue" in the second case. Dowling was convicted of robbing a bank while wearing a ski mask and carrying a small pistol. At trial, the government introduced the testimony of Vena Henry who stated that a similarly masked and armed Dowling had been one of two intruders who had entered her home two weeks after the bank robbery. Even though Dowling had been acquitted in the Henry case, the Supreme Court found the testimony to be constitutionally admissible despite Dowling's double jeopardy and due process claims.

In contrast to *Dowling*, appellee in this case cites the earlier Texas case of *Dedrick v. State, supra*, where a different result was reached on similar facts. Dedrick had first been acquitted on a charge of robbery of Don Funk. Later, Dedrick was convicted of a different robbery, and Funk testified at that trial. Reversing the conviction, the *Dedrick* court noted that the only issue in the earlier case was the conflict between Funk's identification of Dedrick as the robber and the defensive evidence of alibi which the jury resolved in Dedrick's favor. To allow Funk's testimony at the second trial was thought to relitigate that ultimate issue determined in the first case. Implicit in the decision was the rationale that Funk's testimony concerned the ultimate issue of identity in the second case.[1]

The United States Supreme Court in *Dowling*, on the other hand, pointed out that Dowling did not demonstrate that his acquittal in the first trial represented a jury determination that he was not one of the men who entered Henry's home. Thus, the identification of Dowling as one who entered Henry's home could be litigated in the later trial, and the testimony of Henry used as evidence on the ultimate issue of Dowling's identity in the later bank robbery trial. In the case now be-

---

1. The holding in *Dedrick* does go beyond *Ashe* which involved the same robbery in both cases.

fore us, probable cause is not an ultimate issue in appellee's district court felony case.

Citing *Ashe*, the Texas Court of Criminal Appeals has required that the determination in the first proceeding be one that determines an ultimate issue of fact in the later proceeding. In *Neaves v. State*, 767 S.W.2d 784 (Tex.Cr.App.1989), the first proceeding was an administrative proceeding to revoke Neaves' driver's license. The second case was a criminal prosecution for driving while intoxicated. The court held that the issue in the administrative hearing of whether probable cause to believe appellant had been driving while intoxicated existed at the time police requested a breath specimen from him was not "an issue of ultimate fact" in his prosecution for driving while intoxicated. *Neaves v. State, supra* at 786; *State v. Brabson, supra* at 185. Relying on *Neaves*, the court in *Holmberg v. State*, 931 S.W.2d 3 (Tex.App.—Houston [1st Dist.] 1996, pet'n ref'd), held that probable cause to arrest in a DWI proceeding was not an ultimate fact but that it was merely the subject of a suppression hearing proceeding involving a special objection to the admissibility of evidence. The Houston First Court concluded that double jeopardy, including its collateral estoppel implications, did not apply to rulings on the admissibility of evidence. Neither *Neaves* nor *Holmberg* addressed the more fundamental question of jeopardy attachment; both courts appear to have simply assumed that the doctrine of collateral estoppel was applicable and focused only on the ultimate issue requirement.

In the case before us, appellee also relied upon *Ware v. State*, 736 S.W.2d 700 (Tex.Cr.App.1987), at the suppression hearing in the district court. Ware was in possession of a firearm when arrested for retaliation. His arrest was based upon an affidavit where the affiant stated only that she had personal knowledge that Ware had threatened to commit the offense of retaliation. Ware was first convicted for possession of a firearm by a felon, but that conviction was reversed by the Court of Criminal Appeals on the ground that the affidavit supporting the arrest was insufficient. In a subsequent trial, Ware was convicted for retaliation, and the Court of Criminal Appeals also reversed that conviction. *Ware* is distinguishable from the case now before us because jeopardy had attached in the first case in *Ware* and because the issue of probable cause had been fully litigated through appeals in the first case. The affidavit, arrest warrant, and pistol that were admitted into evidence in the second case were the same as those involved in the first prosecution which ended in a "final" judgment. Although recognizing that in purely analytical terms the "law of the case" doctrine is only applicable to subsequent appeals of the same case, the court reasoned that:

> [W]hen the facts and legal issues in a case on appeal are virtually identical *with those in a previous appeal in which the legal issues were resolved* then logic and reason dictate that the appeals be viewed as the same case. (Emphasis added)

*Ware v. State, supra* at 701.

Federal appellate courts deciding the issue have held that jeopardy must attach in the first case before the doctrine of collateral estoppel will be applied in a second case involving a different offense. *Nichols v. Scott*, 69 F.3d 1255, 1269–70 (5th Cir. 1995), *cert. den'd*, 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *Showery v. Samaniego*, 814 F.2d 200, 203 (5th Cir. 1987); *Hubbard v. Hatrak*, 588 F.2d 414, 418 (3rd Cir.1978). Even where jeopardy does attach in the first proceeding, the issue in the second proceeding must be an ultimate issue. *Dowling v. United States, supra; United States v. Brackett*, 113 F.3d 1396 (5th Cir.1997). Other federal appellate courts have discussed the concept of collateral estoppel but have declined to apply it because the defendant waived the point at trial, *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262 (2nd

Cir.1975);[2] *United States ex rel. Fulton v. Franzen*, 659 F.2d 741, 744 (7th Cir.1981), or because various requirements of the collateral estoppel doctrine had not been met by the facts of the case at bar. See *United States v. Perchitti*, 955 F.2d 674, 676 (11th Cir.1992); *United States v. Bonilla Romero*, 836 F.2d 39, 43 (1st Cir.1987).

Texas courts of appeal have required that either jeopardy has attached or that there was the equivalent of "criminal punishment" in the first proceeding before collateral estoppel can be applied in a later criminal trial. Prior to its decision in *Ueno* requiring jeopardy to attach in the first proceeding, the Dallas court in *Ex parte Kohut*, 971 S.W.2d 522 (Tex.App.—Dallas 1997, pet'n ref'd), held that the administrative suspension of a driver's license did not amount to criminal punishment and, therefore, that the driver was not placed in jeopardy for purposes of the double jeopardy clause. Other cases that required jeopardy attachment in the first proceeding are *Ex parte Alt*, 958 S.W.2d 948, 951 (Tex.App.—Austin 1998, no pet'n); *Todd v. State*, 956 S.W.2d 777, 780 (Tex. App.—Waco 1997, pet'n ref'd); *State v. Smiley*, 943 S.W.2d 156, 156–59 (Tex. App.—Amarillo 1997); *Ex parte Martinez*, 942 S.W.2d 89, 92 (Tex.App.—Fort Worth, 1997, no pet'n); *State v. Nash*, 817 S.W.2d 837 (Tex.App.—Amarillo 1991, pet'n ref'd).[3]

Other states facing the issue have required that jeopardy attach in the first proceeding before collateral estoppel will apply. *Commonwealth v. Lagana*, 510 Pa. 477, 509 A.2d 863 (1986); *Commonwealth v. Dias*, 385 Mass. 455, 432 N.E.2d 506 (1982); *State v. McCord*, 402 So.2d 1147, 1149 (Fla.1981); *State v. Doucet*, 359 So.2d 1239, 1248 (La.1977). These courts concluded that, outside the Double Jeopardy Clause guarantee, collateral estoppel was not constitutionally compelled and would not be applied.

Jeopardy did not attach before appellee's misdemeanor case was dismissed. *United States v. Martin Linen Supply Company*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (jeopardy attaches when jury is impaneled and sworn); *State v. Torres*, 805 S.W.2d 418 (Tex.Cr.App. 1991) (jeopardy attaches in a bench trial when defendant pleads to the indictment). The misdemeanor court's suppression order did not involve an "ultimate" issue in the felony case now before us. *Neaves v. State, supra*; *Holmberg v. State, supra*.

### Civil Collateral Estoppel Concepts

Although we find *Ueno* persuasive, *Brabson* and *Tarver* require us to determine whether collateral estoppel should be expanded beyond the double jeopardy concept to apply to the facts of this case. The federal courts have been reluctant to apply civil collateral estoppel concepts to the criminal justice system. Under federal

---

**2.** In a later case, the Second Circuit again rejected an application of collateral estoppel, stating that:

> [W]e see no indication that the constitutionalizing of collateral estoppel in the criminal context imports the doctrine into the Double Jeopardy Clause *in the absence of a final judgment* [in the first proceeding].

*Sailor v. Scully*, 836 F.2d 118, 124 (2d Cir. 1987).

**3.** Reliance on *Davenport v. State*, 574 S.W.2d 73, 75 (Tex.Cr.App.1978), by the *Nash* court to find that jeopardy did not attach in the probation revocation hearing now appears to have been misplaced. *Reynolds v. State*, 4 S.W.3d 13 n. 17 (Tex.Cr.App.1999, at n. 17). However, the *Nash* court did correctly distinguish *Tarver* on the ground that the general verdict revoking probation did not specifically make a finding on the subsequent driving while intoxicated charge and that, therefore, collateral estoppel should not apply to preclude the DWI prosecution. This analysis is, of course, consistent with the analysis in cases where jeopardy attached in the first proceeding and the court must determine if *Ashe* applies. The appellate court must review the entire record and determine whether the jury at the first trial could rationally have based its verdict upon an issue other than that which the defendant seeks to foreclose from consideration in the second trial. See *State v. Sauceda*, 980 S.W.2d 642 (Tex.Cr.App.1998).

law, jeopardy must attach in the first proceeding before collateral estoppel will apply in a separate criminal proceeding. *Nichols v. Scott, supra.* In Texas, however, it is unclear when and to what extent the Texas Court of Criminal Appeals will look to civil collateral estoppel concepts. See *Reynolds v. State,* 4 S.W.3d 13 (Tex. Cr.App.1999).

The Court of Criminal Appeals in *State v. Brabson, supra,* announced that the court has adopted for criminal cases the federal common-law doctrine of "administrative estoppel," citing *United States v. Utah Construction and Mining Company,* 384 U.S. 394, 419–23, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), and *Ex parte Tarver, supra* at 199. *Utah Construction* involved the application of collateral estoppel in a civil case preceded by an administrative civil case. Only the civil law concept of collateral estoppel was involved. *Tarver* is more problematical, however, and appears to expand the doctrine of civil collateral estoppel to criminal cases. See *Reynolds v. State, supra* at n. 18.

### A. Federal Common–Law Collateral Estoppel

Although *Brabson* referred to the federal common law in adopting "administrative estoppel" for Texas criminal cases, the federal common law does not support the application of the collateral estoppel doctrine to the issue before us; nor do we think it should be extended to do so. The *Ashe* Court noted that collateral estoppel first developed in civil litigation, but it:

[H]as been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, 3 A.L.R. 516.

*Ashe v. Swenson, supra* at 443, 90 S.Ct. 1189.

*United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), applied collateral estoppel where jeopardy had not attached in the first case; however, but the same criminal offense was involved in both cases. There, the defendant was indicted for a conspiracy to conceal assets from a trustee in bankruptcy. Before jeopardy attached, the defendant secured an adjudication that the prosecution was barred by a one-year statute of limitations. That decision became a final judgment. Subsequently, in a completely separate case, the Supreme Court held that the one-year statute of limitations did not apply where assets were concealed from a bankruptcy trustee. *United States v. Rabinowich,* 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211 (1915). Relying on *Rabinowich,* the government then reindicted Oppenheimer, and he filed a motion to quash the indictment based on collateral estoppel. Rejecting the government's argument that collateral estoppel should not apply because jeopardy had not attached in the earlier case, Justice Holmes reasoned that the earlier acquittal, even though premised in error on a statute of limitations, meant that the defendant could not be charged for the same crime again.

The Fifth Circuit has consistently held that jeopardy must attach in the first case before the doctrine of collateral estoppel will be applied in a second case involving a different offense. *Nichols v. Scott, supra* at 1269–70; *Showery v. Samaniego,* 814 F.2d 200, 203 (5th Cir.1987). The Fifth Circuit in *Nichols* made it clear that:

Ashe, which was a state prosecution, rests not on "generic" due process, but rather on the double jeopardy clause of the Fifth Amendment, which *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), had previously held was incorporated into the Fourteenth Amendment's due process clause. We have rejected "attempts to erect a due process basis, independent of the double jeopardy clause, for the application of collateral estoppel." *Showery v. Samaniego,* 814 F.2d 200, 203 (5th Cir. 1987).

*Nichols v. Scott, supra* at 1269. The Fifth Circuit did not refer to *United States v. Oppenheimer*, supra, because *Oppenheimer* is more properly viewed and understood as a "law of the case" ruling. Application of a statute of limitations to an offense in a final judgment, even though erroneous, will bar a subsequent prosecution for the same offense under *Oppenheimer*.

A recent Fifth Circuit case reaffirmed that there is no federal common-law rule of collateral estoppel for criminal cases unless jeopardy attached in the first proceeding. *Stringer v. Williams*, 161 F.3d 259 (5th Cir.1998). And even where jeopardy does attach in the first proceeding, the Fifth Circuit in *United States v. Brackett*, 113 F.3d 1396 (5th Cir.1997), noted that *Dowling* effectively limits the doctrine of collateral estoppel to cases in which the government seeks to re-litigate an essential element of the offense being prosecuted in the second case.[4] The Fifth Circuit no longer takes the position that collateral estoppel might apply to evidentiary issues as well as to ultimate issues. See *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir.1972).

The federal cases support the conclusion in *Ueno* that jeopardy must attach in the first proceeding before collateral estoppel will apply in a subsequent and different criminal case. Even if a federal court were to apply the civil collateral estoppel concept of *Utah Construction and Mining Company* to a criminal trial, the court should require a final judgment in the first proceeding. See *Ashe v. Swenson, supra.* As will be discussed, the county court at law's suppression ruling was not a final judgment.

### B.  *Tarver, Brabson, and Reynolds*

The Texas Court of Criminal Appeals in *Reynolds* recently reaffirmed *Brabson* as the decisional law of this State. In so holding, the court also reviewed *Tarver*.

In *Tarver*, the court held that a district attorney was collaterally estopped from re-litigating in a criminal prosecution a fact issue that previously had been resolved adversely to the same district attorney in a probation revocation proceeding. The *Reynolds* court informed us:

> *Tarver* apparently decided jeopardy attached in the probation revocation proceeding because the probation revocation proceeding was close enough to a criminal prosecution or was "essentially criminal." See *Breed* [*v. Jones*, 421 U.S. 519], 95 S.Ct. [1779] at 1785 [44 L.Ed.2d 346 (1975) (risk to which double jeopardy clause refers not present in proceedings that are not "essentially criminal"). Otherwise, *Tarver* could not have decided the "narrow" circumstances of that case implicated "one of the risks" against which the double jeopardy clause protects and it could not have applied federal constitutional collateral estoppel principles under *Ashe.*

*Reynolds v. State, supra* at 19. The Fifth Circuit does not view probation revocation proceedings to be "essentially criminal." *Showery v. Samaniego, supra* at 202. Noting that Texas was not required to follow Fifth Circuit federal constitutional interpretations, the *Reynolds* court observed that *Tarver* was decided as a matter of federal constitutional law, even though the *Tarver* defendant would have lost in federal court for failure to state a federal constitutional claim. *Reynolds v. State, supra* at n. 17. The important point is that, if *Tarver* is construed as a case where jeopardy attached in the probation revocation proceeding, then *Tarver* is consistent with *Ueno* and with the require-

---

4.  The *Brackett* court pointed out that the jury acquittal in the first case "necessarily determined" only that the government had failed to prove, beyond a reasonable doubt, that Brackett knew of the marihuana discovered in his truck as contrasted with the govern-

ment being required to prove in the subsequent conspiracy case that Brackett knew of an agreement to violate the federal narcotics laws and voluntarily participated in that agreement. *United States v. Brackett, supra* at 1400.

ment of jeopardy attachment in the Fifth Circuit cases.

In dicta, however, the *Reynolds* court said that it read *Brabson* as indicating that the common-law "administrative collateral estoppel" principles support the result in *Tarver* making it unnecessary to resort to federal constitutional collateral estoppel principles to support the result because in *Tarver* the parties were the same, the ultimate fact issue in the probation revocation proceeding and the subsequent criminal prosecution were the same, and the ultimate fact issue was resolved adversely to the State in the probation revocation proceeding. *Reynolds v. State, supra* at n. 18. And, although the court in *Brabson* held that the parties were not the same in the earlier administrative hearing as in the criminal case, the rationale in *Brabson* rested upon an assumption that there was collateral estoppel outside the double jeopardy context. If so, then the *Brabson* court's recognition of collateral estoppel must have been based upon the civil law concept of judicial economy, and the question is whether the civil law concept should be further expanded to include suppression hearings.

### C. *Civil Collateral Estoppel Doctrine Should Not Apply to Suppression Hearing*

■ The efficiency concerns that drive the collateral estoppel policy on the civil side are not nearly as important in criminal cases because criminal cases involve a public interest in the accuracy and justice of criminal results that outweighs the economy concerns that undergird the estoppel doctrine. *United States v. Mollier*, 853 F.2d 1169, 1176 (5th Cir.1988); *Standefer v. United States*, 447 U.S. 10, 26, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). If the collateral estoppel doctrine is to be expanded beyond the double jeopardy concept (jeopardy attachment or its "criminal punishment" equivalent in the first proceeding), then we should at least require a final judgment in the first proceeding.

*Ashe* expanded the double jeopardy concept beyond multiple prosecutions for the same offense, but the Court made it clear that the issue had to be first "determined by a valid and final judgment." *Ashe v. Swenson, supra* at 443, 90 S.Ct. 1189.

As opposed to a suppression hearing, there was a final judgment in the first proceeding in *Tarver* and *Brabson*. Although the trial court's denial of the State's motion to revoke probation was not an appealable judgment in *Tarver*, the Court of Criminal Appeals considered the decision not to revoke a final judgment because it could not thereafter be modified. The decision to continue probation would stand until the State filed another motion to revoke alleging a further violation of probation. *Ex parte Tarver, supra* at 199–200.

■ A motion to suppress evidence is a pretrial non-final ruling by the trial court. *McKown v. State*, 915 S.W.2d 160 (Tex.App.—Fort Worth 1996, no pet'n). It is merely a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, n. 10 (Tex.Cr.App.1981); *Ex parte Ueno, supra* at 562–63; *Ex parte Wilkinson*, 952 S.W.2d 9 (Tex.App.—San Antonio 1997, pet'n ref'd); *Holmberg v. State, supra*; *Montalvo v. State*, 846 S.W.2d 133, 138 (Tex.App.—Austin 1993, no pet'n). A suppression ruling is not a final judgment and does not necessarily involve an ultimate issue in a criminal prosecution.

■ A trial court may reconsider its pretrial suppression order. *Montalvo v. State, supra*. Thus, suppression rulings are analogous to preliminary rulings in examining trials. In *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Cr.App.1982), a magistrate found a lack of probable cause in an examining trial. The defendant contended that the magistrate's finding precluded an indictment for the offense on the ground of collateral estoppel. The court rejected his argument on the grounds that he had not been put in jeopardy and that "[t]he dis-

charge at the examining trial was not a final judgment." *Ex parte Robinson, supra* at 556.

The lack of a final judgment can arise in other contexts. In *Ex parte Campbell*, 872 S.W.2d 48 (Tex.App.—Fort Worth 1994, pet'n ref'd), the defendant at his initial trial raised the affirmative defense of insanity, and numerous witnesses testified that the defendant was insane. The State offered no witnesses on the defendant's sanity. The first conviction was reversed and remanded. In his pretrial application for a writ of habeas corpus before the second trial, the defendant argued that, because the State presented no evidence at the initial trial, it was now precluded from offering any evidence in a subsequent trial. The court rejected the defendant's collateral estoppel argument on the ground that it must be shown that there has been a final and valid judgment on the issue of insanity, citing *Garcia v. State*, 768 S.W.2d 726, 730 (Tex.Cr.App.1987), and *Ex parte Lane*, 806 S.W.2d 336 (Tex.App.—Fort Worth 1991, no pet'n). The court concluded:

> This court reversed the judgment of the trial court and remanded the case for a new trial. There is no final and valid judgment of conviction. The reversal of a judgment on appeal eliminates its status as being final and valid for purposes of collateral estoppel.

*Ex parte Campbell, supra* at 49.

Appellant argues that, because the State did not appeal the misdemeanor suppression ruling, the Taylor County Court's ruling became a final judgment. We do not agree. On this point, the reasoning of the court in *Montalvo v. State, supra* at 134, is instructive. The court first framed the questions:

> The points of error, inter alia, present questions, apparently of first impression, as to the extent to which a trial court may reconsider its pretrial suppression order and whether the State's remedy, after the granting of a pretrial motion to suppress evidence, is restricted to its

interlocutory appeal from such pretrial order.

The trial court had first granted the motion to suppress the evidence; but, after a hearing upon a later "Motion to Re–Open Evidence" by the State, the trial court reversed its ruling. Rejecting the defendant's contention that the State's exclusive remedy was an appeal of the suppression ruling and that the State had lost that recourse by not filing a timely appeal, the court held that the State was not restricted to the interlocutory appeal and that the trial court did not abuse its discretion by reopening the evidence and rescinding its earlier pretrial suppression order. Observing that "we find no legislative intent that the statute [TEX. CODE CRIM. PRO. ANN. art. 44.01 (Vernon Pamph. Supp.1999) ] provide an exclusive remedy to the State," the *Montalvo* court noted the differences between appellate review and reappraisal of a pretrial ruling. Only in the latter instance can there be consideration of new facts.

In the case before us, the State was not limited to appealing the misdemeanor suppression ruling. The State could have requested the misdemeanor court to reconsider the question. Instead, the State in effect asked the district court to reconsider the question at the suppression hearing in the felony case. We see no distinction in the State's right to ask for a reconsideration of a suppression ruling in this situation as compared to *Montalvo*.

Policy considerations argue for the application of *Montalvo* to this case. In many counties, the county attorney will be a part-time prosecutor filing the misdemeanor charge and litigating the misdemeanor suppression hearing. Often, the district attorney for that county will reside and office in another county, and there is no coordination between the two prosecutors. Also, we should keep in mind that we are considering the application of collateral estoppel based on civil common law, as opposed to the concept of double jeopar-

dy. Normally, civil law collateral estoppel applies to both parties. Yet, no one would seriously suggest that, if appellee had lost the misdemeanor suppression hearing, he would have been collaterally estopped to re-litigate the issue of the search warrant in his felony prosecution.

Even if there had been a final judgment in the first proceeding, it is not clear under Texas law that the determination of an evidentiary issue should implicate collateral estoppel in a later criminal case. Preliminary evidentiary determinations are similar to other preliminary determinations. For example, in *Ex parte Lane, supra*, there was a final judgment by the Fort Worth Court that bail should not have been denied because the State had not shown that there was "proof evident" of the capital murder. The defendant then filed a pretrial application for writ of habeas corpus, contending that collateral estoppel applied to his prosecution for the capital murder. Rejecting this contention, the court held that "[t]here have been no issues of ultimate fact already determined by a valid and final judgment so as to require applicability of the doctrine of collateral estoppel." *Ex parte Lane, supra* at 340.

### Conclusion

We hold that, in a criminal case, the doctrine of collateral estoppel as encompassed within double jeopardy is limited to those instances in which either jeopardy attached in the earlier proceeding or there was the equivalent of criminal punishment. *Stringer v. Williams, supra; Nichols v. Scott, supra; Ex parte Ueno, supra*. The issue determined in the misdemeanor motion to suppress hearing was not an ultimate issue in the felony case. *Dowling v. United States, supra; Neaves v. State, supra*. Collateral estoppel based upon civil law concepts does not apply because the first proceeding did not end in a final judgment. *Ex parte Robinson, supra; Montalvo v. State, supra*. Therefore, the district court erred in applying collat-

eral estoppel and in dismissing the indictment.

### Judgment

We reverse and remand this cause to the district court for further proceedings consistent with this opinion.