

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| SUSAN J. ARMANTROUT, | ) | No. ED109942 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Madison County |
| v. | ) | Cause No. 20MD-CC00196 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Jerel Lee Poor II |
| | ) | |
| Respondent. | ) | Filed: September 13, 2022 |

## Introduction

This case involves the distinctive situation of a mother and son who were co-defendants and entered contemporaneous guilty pleas, allegedly pursuant to a joint plea agreement. Here, in addition to Movant's claim of ineffective assistance of counsel, we face the issue of how specifically a plea court accepting guilty pleas of co-defendants who are family members must inquire into the plea agreement in order to ensure voluntariness of the pleas.

Susan J. Armantrout[1] (Movant) appeals the motion court's judgment denying her motion to vacate her guilty plea under Rule 24.035 without an evidentiary hearing. Movant

---

[1] Movant was charged as Susan J. Armantrout, but she filed a petition to enter a guilty plea that listed her name as Susan J. Skaggs. At the guilty-plea hearing, Movant's attorney informed the court that her legal name is Susan J. Skaggs, and Susan J. Armantrout is an alias.

argues she alleged facts unrefuted by the record that, if true, would establish her plea was involuntary because her plea counsel failed to inform her of a change in her plea agreement in the days prior to her guilty plea. Specifically, she alleged plea counsel failed to inform her that she was no longer required to plead guilty in order for her son as a co-defendant to receive a more favorable sentence. Appellant alleged that had she known of the change in her plea agreement, she would not have pled guilty but would have proceeded to trial. We reverse and remand for an evidentiary hearing.

Background

The State charged Movant with first-degree murder (Count I), armed criminal action (Count II), and abandonment of a corpse (Count III), for killing her husband and later transporting his body to a storage unit. The State also charged Movant's son, Anthony Skaggs (Skaggs), with tampering with physical evidence and abandonment of a corpse for his involvement in the same incident. Pursuant to a plea agreement, Movant pled guilty to first-degree murder with a sentence of life in prison without the possibility of probation or parole, and the State dismissed the two other remaining charges. The same day, Skaggs pled guilty to tampering with physical evidence, the State dismissed the charge of abandonment of a corpse, the trial court sentenced him to time served, and Skaggs was released from jail.

Movant filed a motion under Rule 24.035, and later an amended motion through counsel, arguing that her guilty plea was involuntary. She alleged that the State had originally made a joint plea offer to Movant and her son, which contained the condition that if Movant pled guilty to murder in the first degree, her son would receive a sentence of time served for his guilty plea. Movant alleged that she had discussed this condition

2

with her plea counsel, and counsel "researched the legality of it, ultimately concluding that while it was unfair, it was legal." Movant alleged she told her counsel that she wished to plead guilty because she wanted her son to be released with time served upon his guilty plea. Movant further alleged that two days before the plea hearing, the State amended its offer to remove the condition that Movant must plead guilty so that her son would receive a sentence of time served. Movant alleged that her counsel never informed her of this change in the plea agreement. Movant also alleged that on the day of her plea, she and her son were held together prior to their court appearances, and Skaggs confirmed his attorney had told him that Movant had to plead guilty to first-degree murder in order for Skaggs to get time served. Movant alleged Skaggs would testify that he was not informed of the removal of this condition from the plea agreement either. Movant alleged that she proceeded to plead guilty believing that she had to plead guilty in order for her son to be released from custody with time served. Finally, Movant alleged that had she known of the change to the plea agreement, she would have rejected the State's plea offer and proceeded to trial. Movant alleged that the State was not seeking the death penalty, and thus she could not have received a worse sentence after trial than life in prison without the possibility of probation or parole.

The motion court denied Movant's motion without an evidentiary hearing, finding the record conclusively refuted the allegations in her motion. This appeal follows.

Standard of Review

Our review is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k). Because the findings of the motion court are presumed to be correct, we will find them clearly erroneous only if, after a review

3

of the entire record, this Court is left with the definite and firm impression that a mistake has been made. Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

To warrant an evidentiary hearing on her claim of ineffective assistance of counsel, Movant must allege facts showing that her counsel's performance fell below an objective standard of reasonableness and that she was prejudiced thereby. See Lafler v. Cooper, 566 U.S. 156, 163 (2012). Where there is a plea of guilty, a claim of ineffective assistance of counsel is immaterial "except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." Worthington v. State, 166 S.W.3d 566, 573 (Mo. banc 2005). Additionally, a movant is prejudiced where a reasonable probability exists that, but for counsel's ineffectiveness, he or she would have rejected the plea agreement and proceeded to trial. Lowery v. State, 520 S.W.3d 474, 478 (Mo. App. S.D. 2017).

A movant is not entitled to an evidentiary hearing where the guilty plea proceedings directly refute the movant's claim that his or her plea was involuntary. Lomax v. State, 163 S.W.3d 561, 563 (Mo. App. E.D. 2005). However, "[t]o justify the denial of an evidentiary hearing . . ., the record must be specific enough to conclusively refute the movant's allegation." Id. (quoting State v. Driver, 912 S.W.2d 52, 56 (Mo. banc 1995)). "[A] negative response to a routine inquiry whether any promises other than stated on the record had been made is too general to encompass all possible statements by counsel to his [or her] client." Webb v. State, 334 S.W.3d 126, 129 (Mo. banc 2011) (quoting Shackleford v. State, 51 S.W.3d 125, 128 (Mo. App. W.D. 2001)).

Discussion

4

Here, Movant argues that she was entitled to an evidentiary hearing on her motion because she alleged unrefuted facts showing her plea was involuntary and unknowing, in that her plea counsel failed to inform her that the State had amended its plea offer to remove the condition that she must plead guilty to first-degree murder in order for her son to receive a sentence of time served. We agree.

In its findings of fact, conclusions of law, and judgment denying Movant's motion without an evidentiary hearing, the motion court relied on the written petition to enter a guilty plea signed by Movant, statements Movant made to the plea court, and a written Certificate of Defense Counsel to conclude the record refuted Movant's claims. Movant's written petition to enter a guilty plea set forth the plea agreement as follows:

> Ct. 1- Life in DOC without possibility of probation or parole
> Ct. 2- Nolle[2]
> Ct. 3- Nolle

Movant put her initials next to this description in the written petition to enter a guilty plea. Movant then confirmed that these were the terms of the agreement in her colloquy with the plea court:

> Q: Okay. Let's go over the plea agreement with you. The State is going to nolle counts II and III; as to count I, Life in the Missouri Department of Corrections without the possibility of probation and parole; is that correct?
>
> A: Yes.

The motion court further noted that Movant circled "yes" next to the box in the written petition to enter a guilty plea which stated the following:

> In entering a plea of guilty to the charge, I am not relying upon any promises, agreements or suggestions made by anyone at any time other than those expressly contained in the above plea agreement.

[2] *Nolle prosequi*, the State will not prosecute the charge, and the charge is dismissed.

5

Movant affirmed a similar statement in her colloquy with the plea court:

> Q: And in entering a plea of guilty to this charge, you're not relying upon any promises, agreements, or suggestions made by anyone else at any other time, other than those expressly contained in the plea agreement, so in other words, the deal is the deal?
>
> A: Yes.

The motion court noted in its findings of fact, conclusions of law, and judgment that (1) Movant's plea agreement did not expressly state the condition that Movant must plead guilty pursuant to the agreement in order for her son to be released with time served; (2) Movant confirmed she was not relying upon any promises, agreements, or suggestions other than those stated in the plea agreement; and (3) Movant's counsel certified that she had "fully, completely and timely" conveyed all plea offers by the State to Movant. We find under the circumstances here that the trial court clearly erred in denying Movant's claim without an evidentiary hearing because Movant sufficiently alleged that her plea was involuntary and unknowing due to her attorney's failure to inform her that she need not plead guilty in order to secure a more favorable sentence for her son. We further find the plea court's questions and Movant's statements in the plea colloquy were not specific enough to conclusively refute Movant's claim without a hearing.

First, Movant's motion sufficiently alleged a claim of ineffective assistance of counsel. Movant and Skaggs were co-defendants, and according to Movant's motion, the State had initially offered them a joint plea agreement that required Movant to plead guilty to first-degree murder, carrying a sentence of life in prison without the possibility of probation or parole, in order for her son to receive a more lenient sentence of time served. Under the terms of this deal, Movant's motion claims the only benefit to Movant was that

6

her son would be released upon pleading guilty. According to Movant's motion, her attorney viewed this deal as unfair and researched whether it was in fact legal.

Moreover, Movant further alleged the State was not seeking the death penalty. Thus, there was no worse sentence than life in prison without the possibility of probation or parole for first-degree murder that Movant could have received after trial. If the allegations in Movant's motion are true, Movant received no personal benefit as it relates to her sentence from the State's dismissal of the other two counts against her as she received the longest possible sentence of life in prison without the possibility of probation or parole for her guilty plea to first-degree murder. But the benefit to her son was sufficient for Movant, and she allegedly let her attorney know that she desired to plead guilty to benefit her son.

According to Movant's motion, her attorney became aware, but never communicated to Movant, that the plea offer changed such that Movant would no longer have to plead guilty and accept life without the possibility of probation or parole in order for her son to be released with time served. Movant alleged she and her son were held together on the day of their pleas prior to pleading guilty, and her son had no knowledge of any change to the plea offer either. If Movant's allegations are true, Movant had no knowledge that the very reason for her acceptance of the plea offer, which she had communicated to her attorney, was removed.

An attorney may render ineffective assistance where the attorney misinforms a client about a consequence of pleading guilty, and the client reasonably depends on such misrepresentation. Moore v. State, 207 S.W.3d 725, 730 (Mo. App. S.D. 2006). "[D]epending upon the context within which it is made, an [attorney's] omission can be

7

considered a misrepresentation." Watts v. State, 206 S.W.3d 413, 417 (Mo. App. S.D. 2006). In Watts, the movant alleged he had initially rejected a plea offer solely because it would have required him to serve 85 percent of his sentence, but then he accepted a later offer believing it was not subject to the 85-percent rule because his attorney failed to inform him that the 85-percent rule still applied. Id. at 416. The Court of Appeals found that the movant was entitled to an evidentiary hearing on his Rule 24.035 motion because, given the factual context, if the movant's allegations were true, his attorney's failure to advise him of the applicability of the 85-percent rule could be considered a misrepresentation and render his plea involuntary. Id. at 417.

Similarly, here, Movant's allegation that her attorney failed to inform her that the State had removed the condition that secured time served for her son, if true, represents a material omission on the part of her attorney under these circumstances. According to Movant's motion, her attorney knew of Movant's desire to care for her son and that was the sole reason Movant desired to plead guilty. Thus, the removal of this condition eliminated Movant's entire reason for pleading guilty, and a reasonable attorney would have communicated this to Movant. Moreover, if Movant's allegations are true, her belief that she needed to plead guilty to benefit her son was reasonable, in that her attorney researched the issue and affirmatively told Movant that it was unfair but legal for the State to impose such a condition. Cf. Hefley v. State, 626 S.W.3d 244, 249-50 (Mo. banc 2021) ("Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive representation upon which the movant is entitled to rely"). Movant alleged she would have insisted on a trial because she could not have fared any worse in terms of her own sentence, as the plea

8

agreement included a sentence of life in prison without the possibility of probation or parole. Thus, if true, the allegations in Movant's motion would entitle her to relief.

Second, the written statements in Movant's petition to enter a plea of guilty and her assent to the plea court's statements during her plea colloquy do not specifically refute Movant's claim that she believed she had to plead guilty to secure lenience for her son, despite the fact that this condition did not appear in the written petition to enter a guilty plea. The plea court noted the disposition of the three counts against Movant contemplated in the plea agreement, and the court asked Movant, "in other words, the deal is the deal?" She replied yes. As it concerned her, life in prison without the possibility of probation or parole was the deal *for her*. All of the questions the plea court asked had to do with Movant's specific charges and sentence, and the written petition to enter a guilty plea reflected the entirety of the plea agreement as it related to Movant.

However, Movant alleged she was not making the deal to benefit herself; she made it to benefit her son. When co-defendants plead guilty, their pleas often implicate other co-defendants, involve some form of cooperation among co-defendants, or lessen the charges or sentences facing a co-defendant; this is especially true when co-defendants are also family members. See Frank v. Blackburn, 646 F.2d 873, 876 n.3 (5th Cir. 1980) (discussing various types of plea agreements; noting "a prosecutor may provide leniency to a defendant's accomplices"); see also Bordenkircher v. Hayes, 434 U.S. 357, 364 n.8 (1978) (noting plea bargain in which prosecutor offers benefit to some person other than accused "might pose a greater danger of inducing a false guilty plea").

However, despite being co-defendants who are also mother and son, and the fact that there was no apparent personal benefit to Movant for pleading guilty, the plea court

asked no questions concerning any agreements or promises there might have been concerning Movant's co-defendant, Skaggs. While the written petition to plead guilty and the plea court's colloquy were very thorough and would have sufficed for most typical guilty pleas, given the unique circumstances here, the plea court could have and should have asked one further, very specific, question during the plea colloquy: "Were there any promises, agreements, suggestions, or discussions that involved your co-defendant and son in this case that you are relying upon to enter this plea of guilty?" Had Movant answered "no," such a record would have sufficed to refute Movant's allegations here and permit the motion court to deny Movant's present motion without an evidentiary hearing.[3] [4]

As it stands, the record showing Movant's affirmation of the terms of her personal agreement with the State as the only agreement there was for her does not specifically refute Movant's belief—due to her counsel's alleged omission—that she had to enter this plea and accept this particular sentence in order for her son to receive more favorable terms in *his* plea agreement. Likewise, Movant's realistic belief about her need to plead guilty to benefit her son was not inconsistent with her answers to the court that there was no outside agreement, promise, or suggestion regarding the outcome *for her*. Cf. Price v. State, 171 S.W.3d 154, 157 (Mo. App. E.D. 2005) (movant's affirmative responses to

---

[3] The plea court did ask Movant whether any member of her family had been "mistreated, forced, threatened or coerced in any manner by anyone in order to get [Movant] to plead guilty." However, Movant made no allegations that her son was mistreated, forced, threatened, or coerced. As alleged, the joint plea offer Movant willingly accepted after her counsel researched the offer does not involve mistreatment, force, threats, or coercion. Thus, Movant's negative answer to the plea court's question here does not conclusively refute Movant's allegations.

[4] The dissent maintains our holding "adds an unnecessary layer to the plea colloquy, burdening trial courts . . . ." We reiterate that this one question is necessary given the Supreme Court of Missouri's precedent in Webb requiring specificity, in order for the motion court to deny a movant's motion without an evidentiary hearing. Since the plea court here did not inquire about any agreements or promises involving Movant's co-defendant, this simply means the motion court must hold a hearing on Movant's claim that her plea was involuntary due to her counsel's omission.

10

general questions whether he was pleading guilty of his own free will and whether he was satisfied with counsel did not refute movant's claim that counsel pressured movant into pleading guilty because he could not afford his legal fees). What the court stated Movant personally would receive regarding her sentence and the counts against her was exactly what she expected. Thus, under these particular circumstances here, involving co-defendants with a mother-son relationship, we do not find Movant's answers to the court's inquiries here encompassed her attorney's statements and omission to her regarding the condition that she plead guilty in order to benefit her son. See Webb, 346 S.W.3d at 129.[5]

Finally, the motion court in its denial of an evidentiary hearing relied in part on a written Certificate of Defense Counsel, in which Movant's counsel stated, "There have not been any plea offers made by the State that I have not conveyed fully, completely and timely to [Movant]." Counsel additionally affirmed in the Certificate of Defense Counsel that she believed Movant's guilty plea was voluntarily made. It is not clear that the Certificate of Defense Counsel here specifically refutes Movant's claim that Movant's counsel failed to communicate a *change* in the plea agreement concerning her son that counsel had previously fully conveyed to Movant. Regardless, the Supreme Court of Missouri has previously discussed the question of the extent to which a motion court can rely upon unsworn statements of defense counsel in its decision to deny a movant an evidentiary hearing in the context of Rule 29.07(b)(4), which requires a sentencing court to conduct an inquiry into defense counsel's effectiveness. See McIntosh v. State, 413

---

[5] The dissent distinguishes Webb in passing by asserting the record here contains "far more evidence than a simple negative response to a routine inquiry regarding promises made to refute Movant's post-conviction claim." Aside from the plea court's question regarding threats or coercion to a family member, discussed *supra* n.3, and the Certificate of Defense Counsel, which we discuss *infra*, the dissent notes Movant's assurances to the plea court that she was satisfied with her plea counsel. However, Movant alleges she did not know of the change to her plea agreement prior to pleading guilty, so she could not have raised this complaint regarding her counsel during her guilty-plea hearing.

11

S.W.3d 320, 327-28 (Mo. banc 2013). The Supreme Court of Missouri in <u>McIntosh</u> concluded that while an attorney has an ethical duty to make truthful statements as an officer of the court, if a movant's post-conviction motion "raises a question of fact as to the accuracy of defense counsel's claims of reasonable trial strategy, and if the other requirements for an evidentiary hearing are met, a movant may be entitled to an evidentiary hearing on that issue." <u>Id.</u> at 328. Thus, a court should not deny a movant an evidentiary hearing upon the basis of counsel's unsworn statements, where the movant calls such statements into question. Here, Movant has raised a question about the accuracy of her counsel's statement to the plea court regarding counsel's conveyance of all plea offers from the State, and Movant's motion has met the other requirements for an evidentiary hearing. The motion court clearly erred in relying on counsel's certification to deny an evidentiary hearing on this issue.

This is not a case where the guilt of the movant is necessarily in question, nor is it a given that Movant will be able to prove at the hearing the allegations in her motion by a preponderance of the evidence. However, Rule 24.035 provides evidentiary hearings precisely for situations such as these.[6] First-degree murder is a serious charge, and the allegations in Movant's motion show that the benefit she bargained for, of which her attorney was fully aware, no longer required her to willingly accept the harshest sentence sought by the State to benefit her son. Perhaps at trial Movant could have been convicted of a lesser-included crime, such as second-degree murder, which carries a lesser sentence

---

[6] We note that Movant's 24.035 motion and the motion court's ruling all took place in 2021, during the effects of COVID-19, limiting the ability of many courts to conduct in-person proceedings. However, considering the allegations and record here, along with the gravity of the charges against Movant, we reiterate that Rule 24.035 mandates hearings whenever the record does not *conclusively* refute a Movant's claims, and we urge trial courts to err on the side of conducting post-conviction-relief hearings out of an abundance of caution in such situations.

than first-degree murder. Instead, Movant gave up that right believing her guilty plea secured a benefit for her son, not knowing that her son would receive the benefit of release with time served regardless of her plea. If all this is true, her attorney's failure to advise her of the change to the plea agreement rendered her plea involuntary and unknowing, and the record does not conclusively refute Movant's claims.[7] The motion court clearly erred in denying Movant's motion without an evidentiary hearing. Point granted.

Conclusion

We reverse the denial of Movant's motion and remand to the motion court to conduct an evidentiary hearing.

Gary M. Gaertner, Jr., J.

Robert M. Clayton III, P.J., concurs.
Thomas C. Clark II, J., dissents in a separate opinion.

---

[7] At the same time, we note Judge Fischer's observation that "defendants who have admitted they are guilty as charged but yet seek to set aside their guilty plea relying on the holding of the *per curiam* opinion [in Webb] will lose the benefit of their bargain obtained as a result of their plea and ultimately may receive a less favorable outcome." Webb, 334 S.W.3d at 145 (Fischer, J., dissenting).



# In the Missouri Court of Appeals Eastern District

## DIVISION TWO

SUSAN J. ARMANTROUT,[1]

      Appellant,

vs.

STATE OF MISSOURI,

      Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. ED109942

Appeal from the Circuit Court of
Madison County
Cause No. 20MD-CC00196

Honorable Jerel Lee Poor II

Filed: September 13, 2022

### DISSENT

I dissent because the majority adds an unnecessary layer to the plea colloquy, burdening

trial courts to initially investigate - and subsequently evaluate - the plea consequences involving

codefendants. Here, the record is abundant, straightforward and thorough. It clearly refutes

Movant's claim and supports the motion court denying Movant's Rule 24.035 motion without a

hearing. Rule 24.035(h). For similar reasons, the record does not support a finding that the

motion court's findings and conclusions are clearly erroneous. Rule 24.035(k).

---

[1] In the underlying criminal case, cause 18SG-CR01113, the state filed charges as *State of Missouri v. Susan J. Armantrout*. When pleading guilty on April 3, 2020, Appellant and her attorney informed the trial court that Appellant's legal name is Susan Skaggs.

1

To be entitled to an evidentiary hearing on a motion for relief under Rule 24.035, "a movant must (1) allege facts, not conclusions, that, if true, would warrant relief; (2) the facts alleged must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *Whitehead v. State*, 481 S.W.3d 116, 122 (Mo. App. E.D. 2016).

A very clear record refutes Movant's claim that her trial attorney failed to inform her that she did not have to plead guilty for her son to receive favorable treatment in his pending criminal case. The record is abundant, clear and thorough. Initially, Movant signed and initialed a comprehensive, 13-page "Petition to Enter a Guilty Plea" (plea agreement) that includes 81 questions addressing a range of subject matter and circumstances affecting her guilty plea.[2] Then, Movant participated in a thorough plea colloquy fully satisfying the requirements of Rule 24.02(b)(c). Rule 24.02. Additionally, the evidence is bolstered by a signed "Certification of Defense Counsel," (certification) where Movant's attorney directly refutes Movant's claim by representing to the court that she "fully, completely" conveyed all plea offers to Movant.

Initially, Movant signed the plea agreement where she represented to the court that she desired to plead guilty to one count of murder in the first degree and understood that she would serve a term of life in prison without the possibility of probation or parole in exchange for the state filing a *nolle prosequi* or dismissing both remaining felonies, armed criminal action and abandonment of a corpse. Her initials appear next to this specific language (No. 22). Notably, the

---

[2] Movant responded to every question, almost exclusively circling the "yes" response, and her initials appear next to every answer. At times, her initials appear at the top with a line continuing down the length of the page. Her signature, her plea attorney's signature and the prosecutor's signature appear on page ten. Additionally, the following language appears immediately above Movant's signature: "I represent to the Court that I have responded truthfully to and initialed my response to each of the statements in this petition in the presence of my attorney. I have received a copy of this petition." Two pages of the 13-page document include the "Certification of Defense Counsel" signed by Movant's plea attorney.

2

plea agreement does not contain language requiring Movant to plead guilty in order for her son to receive time served. In fact, it does not even mention Movant's son.

As demonstrated by her signature appearing on the final page, her initials and by circling the "yes" response to each specific inquiry, she makes the following representations among others within the plea agreement:

She desires to enter her guilty plea which is the result of negotiations between her, her attorney and the prosecutor (No. 21);

By entering a guilty plea, she is ". . . not relying on any promises agreements or suggestions made by anyone at any time other than those expressly contained in the plea agreement" (No. 24);

She "knowingly and voluntarily rejects all plea offers made by the state" other than this particular agreement (No. 26); and

She requests that the court accept this plea agreement (No. 27).

During the guilty plea, Movant reiterates her understanding of the current agreement, confirms that her responses contained within the plea agreement are truthful, fails to mention her son or even allude to how his situation affects her decision making and denies that she or any of her relatives were threatened or coerced to cause her to plead guilty.

Additionally, she assured the court that she was satisfied with counsel's performance, despite the motion court forewarning Movant that her responses affected any future postconviction relief claims. See *Golliday v. State*, 203 S.W.3d 258, 261 (Mo. App. S.D. 2006) ("A movant who repeatedly assures the court that she is satisfied with her counsel's performance is later barred from obtaining post-conviction relief based on ineffective assistance of counsel."); *Wharton v. State*, 431 S.W.3d 1, 7 (Mo. App. E.D. 2014).

In addition to her own representations supporting the voluntary and knowing nature of her plea, Movant's plea attorney filed and signed a two-page certification addressing the same

3

subject matter and refuting any allegation that plea counsel failed to convey any offers or change in circumstances to Movant. Among other representations contained in this two-page statement, plea counsel certifies to the court that she discussed the content of all 81 questions contained within the plea agreement and Movant's responses accurately reflect the substance of their discussions, Movant's statements or representations within the plea agreement are accurate to the best of the attorney's knowledge, she discussed with the Movant all of the representations that the attorney would make to the court and, significantly, "(t)here have not been any plea offers made by the state that I have not conveyed fully, completely and timely to (Movant.)"

The motion court cites plea counsel's certification as reason for denying Movant's Amended Motion without a hearing because it directly refutes her allegation. Her attorney independently represented to the motion court that she "fully, completely and timely" conveyed all state plea offers to Movant, directly refuting Movant's allegation. Misrepresenting this or any other fact to the court is strictly prohibited by the Rules of Professional Conduct. Rule 4-3.3(a)(1).

Movant has not met the hearing prerequisites, based on the collective record which overwhelmingly refutes Movant's claims. In the comprehensive signed, written plea agreement, Movant states the life in prison disposition is reached following negotiations involving her, and both attorneys, and she specifically states that she is not relying on any promises other than those in the written agreement. During the thorough plea colloquy with the court and while under oath, Movant acknowledged the written plea agreement, confirmed its accuracy, reiterated that she rejected all prior offers other than the existing agreement and assured the court that she was pleading guilty knowingly and voluntarily. While this is sufficient to refute her claim that she was unaware that it was unnecessary to plead guilty for her son to receive time served, she also

4

directly contradicts her allegation when she denies that anyone threatened or coerced her or any family members to cause her to plead.[3]

For similar reasons, *Watts* is distinguishable from this matter. *Watts v. State*, 206 S.W.3d 413 (Mo. App. S.D. 2006). While the Southern District reversed the trial court because it failed to make a specific finding about plea counsel neglecting to explain that pleading guilty to a charge would require serving 85 percent of the sentence, here the record is more substantial. *Id.* at 418. Unlike *Watts*, here, plea counsel signed the certification, assuring the court that she made the proper representations and conveyed all relevant plea offer material to her client, a significant evidentiary addition that directly refutes Movant's claim.[4]

Movant's 13-page plea agreement does not refer to her son or her son's case. Notably, the agreement does not mention or explain that her guilty plea influences a more favorable outcome for her son. At a minimum, a reference to his favorable treatment would be expected considering her allegation.

Based on Movant's signed plea agreement, her statements at the plea colloquy and her recognition of her attorney certification, Movant repeatedly demonstrated her understanding of the plea agreement and confirmed her desire to knowingly and voluntarily plead guilty to the charge. Addressing more unique familial circumstances does not perfect the plea, it simply adds to the plea colloquy. For these reasons, I dissent. The motion court properly denied Movant's

---

[3] The majority states had the plea court simply asked about the existence of "any promises, agreements, suggestions or discussions" involving her son the record would adequately refute her claim. The plea court did so when it asked Movant if any family member has been mistreated, forced, threatened or coerced to induce her plea. While the plea court's inquiry does not specifically mention her son, the dissent gently reminds the majority that her son is a family member.

[4] The majority points to the passing reference to the Supreme Court of Missouri decision in *Webb v. State*, 346 S.W.3d 126 (Mo. banc 2011). Similar to *Watts*, *Webb* is distinguishable from the present case because as discussed in detail, the record in this case contains far more evidence than a simple negative response to a routine inquiry regarding promises made to refute Movant's post-conviction claim.

Amended Rule 24.035 Motion without an evidentiary hearing because her ineffective assistance of counsel claim was refuted by the record.

*[signature]*

_____
Thomas C. Clark II, Judge