**Raymond SHOWERY,**
**Petitioner-Appellant,**

v.

**Leo SAMANIEGO, Sheriff, El Paso**
**County, Texas,**
**Respondent-Appellee.**

**No. 86–1606.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1987.

Michael R. Gibson, El Paso, Tex., for petitioner-appellant.

Robert Davidson Dinsmoor, Steve W. Simmons, Asst. Dist. Attys., El Paso, Tex., for respondent-appellee.

Before CLARK, Chief Judge, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Defendant Raymond Showery asserts in this habeas corpus petition that the doctrine of collateral estoppel applies, as a constitutional requirement, to bar the State of Texas from prosecuting him for the offense of involuntary manslaughter. Showery allegedly committed this offense while free on an appellate bond that had been granted pending Showery's appeal of his previous conviction for murder.[1] The state sought revocation of the appellate bond, alleging that by committing the manslaughter offense Showery violated his bond conditions. The district court revoked the bond but the Texas Court of Appeals held that the state adduced insufficient proof to demonstrate by a preponderance of the evidence that Showery had committed the offense.[2] The Texas Court of Criminal Appeals affirmed the appellate court decision.[3] When the state attempted to prosecute Showery for involuntary manslaughter, he filed a state habeas challenge which the state courts denied.[4] After exhausting his state remedies he filed for federal habeas relief, which the district court denied. Although the question is a close one, we affirm because Showery was never in jeopardy of being twice criminally punished for the same offense.

We begin with the basic principle that a petitioner challenging state criminal proceedings must establish a violation of the federal Constitution or laws or treaties of the United States before a federal court can grant a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). The constitutional underpinnings upon which Showery initially relies are founded in the fifth amendment guarantee against double jeopardy, which is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).[5]

---

1. *Showery v. State*, 690 S.W.2d 689 (Tex.App.—El Paso, 1985, pet. ref'd).

2. *Showery v. State*, No. 08–84–001944–CR (Tex. App.—El Paso, Sept. 26, 1984) (unpublished opinion).

3. No. 1077–84 (Tex.Crim.App., April 17, 1985) (unpublished opinion).

4. *Showery v. State*, 704 S.W.2d 153 (Tex.App.—El Paso, 1986, pet. ref'd).

5. As a matter of comity, the federal courts are chary of enjoining state criminal proceedings under the doctrine of abstention established in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Double jeopardy claims, however, are an exception to the *Younger* doctrine. *Davis v. Herring*, 800 F.2d 513, 516 (5th Cir.1986). The right to be free from double jeopardy includes not only the right to prevail in subsequent proceedings on constitutional grounds, but also the right to be free from the burdens of the subsequent trial itself. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Thus federal courts are empowered to enjoin state criminal proceedings

■ The guarantee against double jeopardy protects against multiple punishments for the same offense and against a second prosecution for the same offense after either an acquittal or conviction. *Davis v. Herring,* 800 F.2d 513, 516 (1986) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). The doctrine of collateral estoppel stands for the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1191, 25 L.Ed.2d 469 (1970).

In today's case, at the bond revocation hearing the state attempted to establish that Showery had committed the offense of involuntary manslaughter, thereby violating a condition of his bond. Article 44.04(c) of the Texas Code of Criminal Procedure provides: "On a finding by the Court on a preponderance of the evidence of a violation of a condition, the Court may revoke the bail." The Texas Court of Criminal Appeals affirmed the intermediate appellate court's determination that the state had failed to prove by a preponderance of the evidence that Showery had committed the manslaughter offense. *See Showery v. State,* 704 S.W.2d 153 (Tex.App.—El Paso 1986, pet. ref'd). Showery contends that this determination constituted a valid and final judgment concerning the issue of whether he committed the offense. Relying on *Ashe,* he urges therefore that the state be now collaterally estopped from attempting to relitigate this fact issue in a subsequent prosecution.

In *Ashe* six poker players were robbed by three or four persons. After the defendant was acquitted for the robbery of one of the victims, the state subsequently prosecuted him for the robbery of a different victim. On review, the Supreme Court first determined that in the initial prosecution, the single rationally conceivable issue was whether the defendant had been one of the robbers. Because that issue was re-

solved against the state, the Court held that the state could not constitutionally hail the defendant before a new jury to relitigate that issue. 397 U.S. at 446–47, 90 S.Ct. at 1195–96.

*Ashe,* however, does not carry the day. The Supreme Court decided that case after its *Benton* decision, which made the fifth amendment guarantee against double jeopardy fully applicable to the states. In that context, *Ashe* explicitly addressed the application of collateral estoppel as an "ingredient" of the fifth amendment guarantee against double jeopardy. 397 U.S. at 442, 90 S.Ct. at 1193. We have held that the double jeopardy clause does not apply to parole and probation revocation hearings. *United States v. Whitney,* 649 F.2d 296 (5th Cir. Unit B 1981). The risk against which double jeopardy protects is not present in proceedings that are not "essentially criminal." *Id.* at 297 (citing *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975)). In *Breed v. Jones,* a juvenile court initially determined that the allegations brought by the state— that the defendant had committed the juvenile equivalent of armed robbery—were true. The high court determined that double jeopardy protections attached to the juvenile adjudication, thus barring the state from subsequently prosecuting the defendant, as an adult, for armed robbery.

■ In *Whitney,* the state initially sought a revocation of parole, alleging specific acts of misconduct, but the state failed to prevail because the parole term had expired. The state then sought to revoke Ms. Whitney's probation, alleging the same dilatory conduct. This Court found a fundamental distinction between parole and probation proceedings and the juvenile adjudication found to be "essentially criminal" in *Breed v. Jones.* Parole and revocation proceedings are not designed to punish for the violations of criminal laws, but to determine whether the conditions of parole or probation have been violated, and thus ulti-

that would constitute double jeopardy. *Davis,* 800 F.2d at 516 (citing *Abney,* 431 U.S. at 661– 62, 97 S.Ct. at 2041).

mately to determine whether the parolee or probationer is a good risk. That reasoning applies with equal force to appellate bond revocation proceedings. Even though the alleged basis for bond revocation is the commission of a subsequent offense, the proceedings are not designed to obtain a conviction for the violation of that offense. They are designed to assess the propriety of allowing the defendant, who has already been convicted and sentenced on a separate charge, to remain free on bond. Such proceedings are not "essentially criminal."

We are mindful that the nonapplication of double jeopardy to parole, probation, and appellate bond proceedings can afford the government a second bite at the apple. If it fails the first time, it has the opportunity to bolster and refine its initially unpersuasive case. We are also mindful that this "trial run" is not entirely unhelpful to the defendant in preparing his case.

 Showery vigorously argues that this is a collateral estoppel case and not a double jeopardy claim. We are unpersuaded, however, by his attempts to erect a due process basis, independent of the double jeopardy clause, for the application of collateral estoppel. The *Ashe* decision provides him little solace. It squarely held that the rule of collateral estoppel is "embodied in the fifth amendment guarantee against double jeopardy." 397 U.S. at 445, 90 S.Ct. at 1195. In *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), a pre-*Benton* decision, the Court had addressed virtually the same facts as those found in *Ashe*. The *Hoag* court had addressed the constitutional issue solely as a due process question under the Four-

teenth Amendment. In dicta, the Court noted its "grave doubts whether collateral estoppel can be regarded as a constitutional requirement." Noting the *Hoag* dicta, the *Ashe* court reiterated that the basis for its contrary result was the intervention of the *Benton* decision, which applied the double jeopardy clause to the states. *Ashe* thus makes it clear that collateral estoppel applies insofar as it is necessary to safeguard against the risk of double jeopardy, i.e. the risk of unfair and abusive reprosecutions.[6] 397 U.S. at 445, n. 10, 90 S.Ct. at 1195, n. 10.

Showery asserts that our Court has applied collateral estoppel to bar a state from attempting to establish the fact of the crime, once that issue has already been decided against the government, citing *United States v. Mock*, 604 F.2d 341 (5th Cir.1979).[7] That case provides little assistance to Showery in his effort to clear the threshold burden of showing a constitutional basis for his collateral estoppel claim. *Mock* involved two criminal proceedings alleging violations of federal laws. Collateral estoppel has long been an established rule of federal criminal law. *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194. Furthermore, the *Mock* Court specifically noted the link between collateral estoppel and double jeopardy, stating that "while the parent doctrine of double jeopardy bars a subsequent prosecution ... its progeny, collateral estoppel, bars only reintroduction or relitigation of facts already established against the government. 604 F.2d at 343. Thus, *Mock* applies collateral estoppel pursuant to *Ashe* and does not purport to

---

6. Similarly, Showery's reliance on *United States v. Utah Mining & Construction*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), is misplaced. In *Utah Mining*, the Court interpreted the scope of a contractual clause, in which the parties agreed that an administrative agency would resolve certain disputes. The Court was also called upon to apply the federal statute that establishes review standards for agency determinations. In subsequent civil litigation, the Court accorded finality to certain of the agencies findings of fact. In dicta, the Court noted that the result was "harmonious with general principles of collateral estoppel," adding that there was "neither need nor justification for a second evidentiary hearing on these matters al-

ready resolved between these two parties." 384 U.S. at 422, 86 S.Ct. at 1560. The facts in *Utah Mining* are not analogous to today's case and the decision provides no support for the proposition that collateral estoppel rises to the level of a constitutional requirement apart from the double jeopardy clause.

7. In *Mock*, the defendant was acquitted on the charge of conspiracy to import marijuana. In a subsequent prosecution for tax evasion, the government attempted to show that the defendant received income from the very conspiracy operation of which he had been acquitted.

expand the constitutional basis for the application of collateral estoppel beyond the double jeopardy clause.

The Texas Court of Criminal Appeals has recently held that collateral estoppel bars the subsequent prosecution of an offense after the state has failed to prove "identical allegations" in a probation revocation hearing. *In re Tarver*, 725 S.W.2d 195 (Tex.Crim.App.1986).[8] In reaching its determination, the court relied on a number of Texas cases, in addition to *Breed v. Jones* and *Mock*. It is of course within that court's purview to extend state constitutional guarantees beyond those afforded by the federal Constitution. For reasons we have already stated, however, we find *Whitney* controlling and decline to extend double jeopardy protections to appellate bond revocations. Furthermore, we decline to find the collateral estoppel doctrine cognizable as a constitutional claim apart from those claims that are recognized under the double jeopardy clause.

Accordingly, we AFFIRM the district court's denial of federal habeas corpus relief.

GOLDBERG, Circuit Judge, dissenting:

I respectfully dissent.

I believe that double jeopardy attaches in this case. It is true that a bail proceeding is primarily administrative, not punitive, in nature, and thus may not *necessarily* require double jeopardy to attach, *see United States v. Whitney*, 649 F.2d 296 (5th Cir. Unit B 1981); *cf. United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). But the revocation of bail hearing held here provided the government with *identical* prosecutorial motivations regarding public safety as would a criminal trial, and the defendant with *identical* liberty concerns. The government attempted to incarcerate Showery for the commission of a crime, and had they succeeded, Showery would have gone to jail. I thus see no persuasive distinction between this situation and that

in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Simply put, the bail hearing though administrative in form was punitive in substance.

Even were double jeopardy not to attach, collateral estoppel could be raised as a successful constitutional defense to prosecution. As the Supreme Court recognized in *Ashe v. Swenson*, 397 U.S. 436, 441–42, 90 S.Ct. 1189, 1193, 25 L.Ed.2d 469 (1970), *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), *reh. denied*, 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958), did not determine whether collateral estoppel was constitutionally required under the Fifth and Fourteenth Amendment Due Process Clauses. In deciding that collateral estoppel was constitutionally required under the Double Jeopardy Clause, however, the Supreme Court did *not* foreclose the possibility that collateral estoppel might also be constitutionally required in a criminal context as a "fundamental principle of ordered liberty" or as a principle of "fundamental fairness." *Ashe*, 397 U.S. at 442, 90 S.Ct. at 1193 ("The doctrine of *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, [23 L.Ed.2d 707 (1969),] puts the issues *in the present case* in a perspective quite different from that in which the issues were perceived in *Hoag v. New Jersey*, *supra*.") (emphasis added). To the contrary, the existence of this independent, constitutional requirement of collateral estoppel is strongly suggested by *Ashe*'s explicit recognition that criminal collateral estoppel evolved from its civil analogue, in a context where double jeopardy does not exist. *Id.* at 443, 90 S.Ct. at 1194 (citing *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916)); *see id.* at 447, 90 S.Ct. at 1196 (Black, J., concurring) (criticizing the majority for implying that fundamental fairness may be applicable to collateral estoppel); *cf. Coffey v. United States*, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886) *distinguished on burden of proof grounds and limited, 89 Fire-*

---

**8.** At the time of this writing, *Tarver* has not been released for publication and remains subject to revision or withdrawal.

*arms,* 465 U.S. at 358–61, 104 S.Ct. at 1103–04.

Collateral estoppel should bar the subsequent prosecution here. The precise issue that was decided in the bail revocation hearing is now being tried: whether Showery had committed the involuntary manslaughter. The government failed to prove this under a substantially lower burden of proof requirement. Thus, "when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194.

Assuming that double jeopardy should not attach, no irreparable injury would occur were Showery required to raise his collateral estoppel defense in the state court in the first instance. I would therefore abstain from enjoining the state trial court. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Kolski v. Watkins,* 544 F.2d 762 (5th Cir.1977). Because I believe double jeopardy should attach, however, I must dissent from the judgment of the majority.