**UNITED STATES of America ex rel. Chi Feng SU, Petitioner,**

v.

**Robert F. CASEY, et al., Respondents.**

**No. 89 C 4516.**

United States District Court, N.D. Illinois, E.D.

May 10, 1990.

Algis Augustine, Terrance A. Norton, Stackler and Augustine, Chicago, Ill., for petitioner.

Arlene Anderson, Terence Madsen, Asst. Attys. Gen., Criminal Appeals Div., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Dr. Chi Feng Su ("Su") filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. section 2254 on June 5, 1989. The respondents[1] have answered the petition and Su's motion for judgment on the pleadings is now before the Court. The Court grants both the petition for writ of habeas corpus and the motion for judgment on the pleadings for the reasons set forth below.

## I. PROCEDURAL HISTORY

Su was indicted on 55 counts of unlawful delivery of a controlled substance in the Circuit Court of Kane County. Each count of the indictment charged delivery of a controlled substance to one of four undercover police officers. Counts 1 through 20 charged deliveries made to Agent Louise Gore. Counts 21 through 35 charged deliveries to Agent Joseph Benigno. Counts 36 through 40 charged deliveries made to Agent John Satriano. Finally, Counts 41 through 55 charged that Su made deliveries to each of the agents named above, as well as Agent Louise Jones. Each count of the indictment represented a separate delivery on either a date different from the dates indicated in the other counts or to a different agent, such that each count represented a separate delivery of a controlled substance. The State elected to prosecute Su on only counts 41 through 55 of the indictment, but introduced evidence as to all counts of the indictment "to establish Petitioner's motive, intent, method of operation and common scheme." (State's Brief, p. 2) Following a bench trial in the Circuit Court of Kane County, Judge Nickels acquitted Su on all fifteen counts.

The State then decided to prosecute Su on Counts 1 through 40 of the indictment. Su moved to dismiss the remaining counts of the indictment, but that motion was denied by Judge Nickels. Su appealed the denial of his motion to dismiss to the Illinois Appellate Court for the Second District, raising the following issues:

(1) Whether prosecution of the remaining counts of the indictment was barred by the doctrine of collateral estoppel.

(2) Whether prosecution of the remaining counts of the indictment would violate the constitutional or statutory prohibitions against double jeopardy.

(3) Whether compulsory joinder as provided in sections 3–3(b) and 3–4(b)(1) of the Illinois Criminal Code of 1961 barred prosecution of the remaining counts. Ill.Rev.Stat. ch. 38, ¶ 3–3(b) and 3–4(b)(1).

The Illinois Appellate Court affirmed Judge Nickels' decision on March 30, 1989. Su then petitioned the Illinois Supreme

---

**1.** Respondents are Robert F. Casey, States Attorney of Kane County, John Randall, Sheriff of Kane County, and Neil F. Hartigan, Attorney General of the State of Illinois. The court will use the designation of "respondents" throughout this opinion for convenience.

Court for leave to appeal. The Illinois Supreme Court denied Su's petition on October 5, 1989.

Su's petition for a writ of habeas corpus sets forth two grounds for relief, as follows:

1) The threatened second prosecution is barred by the doctrine of collateral estoppel.

2) The threatened second prosecution is barred by double jeopardy.[2]

The relief requested in the petition is that this Court enjoin the criminal proceedings against Su in the Circuit Court of Kane County.

## II.  DISCUSSION

■ Ordinarily the doctrine of abstention prevents federal courts from enjoining state, criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). An exception to *Younger* abstention exists, however, where the habeas corpus petitioner asserts a claim of double jeopardy. *Showery v. Samaniego*, 814 F.2d 200, 201, n. 5 (5th Cir. 1987); *U.S., et al. v. Circuit Court of Milwaukee County*, 675 F.2d 946 (7th Cir. 1982). The rationale for the exception is that "the right to be free from double jeopardy includes not only the right to prevail in subsequent proceedings on constitutional grounds, but also the right to be free from the burdens of the subsequent trial itself." *Showery*, 814 F.2d at 201, n. 5 (citation omitted); *Milwaukee County*, 675 F.2d at 948. Therefore, the Court addresses the merits of Su's double jeopardy claim.

■ The Double Jeopardy Clause of the Fifth Amendment embodies three prohibitions: (1) against further prosecution of the same defendant for the same offense following an acquittal; (2) against further prosecution of a defendant for the same offense following a conviction; and (3) against multiple punishment of a defendant for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Su's petition implicates

the first double jeopardy prohibition. The State's argument and the Illinois Appellate Court's reasoning is that Su was tried only as to counts 41 through 55 of the indictment and those counts do not constitute the same offenses as the offenses charged in Counts 1 through 40 of the indictment. Su argues that the State introduced evidence as to all 55 counts of the indictment at the trial to establish the requisite intent, which was the only element of the crimes at issue, and therefore, Su's acquittal as to counts 41 through 55 collaterally estops the State from trying Su as to counts 1 through 40. In essence, Su's double jeopardy claim is that collateral estoppel should prevent the State from presenting the same evidence as to intent to try Su again.

Su relies upon *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), most heavily in support of his argument that the State is collaterally estopped from trying him on counts 1 through 40. In *Ashe*, the petitioner was charged in six separate counts with robbing six men while they were playing poker. Ashe was tried as to only one of the counts and acquitted. The State subsequently tried Ashe on another of the counts, involving another poker player. At the second trial, the "witnesses were for the most part the same, though this time their testimony was substantially stronger on the issue of the petitioner's identity." *Id.* at 439–40, 90 S.Ct. at 1191–92. In both the first and second trials in *Ashe*, the principal issue was the identity of the defendant, while proof of the actual robbery was uncontested. *Id.* at 441, 90 S.Ct. at 1193. The Supreme Court held that the Double Jeopardy Clause embodies the doctrine of collateral estoppel and that once the jury found that there was reasonable doubt as to whether Ashe was one of the robbers, the State could not again try that issue before another jury.

Su argues that this case is similar to *Ashe* because during the trial on counts 41 through 55 of the indictment, the principal issue was his intent, while delivery of the

---

**2.** Su also argued that under the circumstances, exhaustion of state court remedies was not required. That issue became moot on October 5,

1989, when the Illinois Supreme Court denied Su's petition for leave to appeal.

substances to the agents was largely uncontested.[3] Furthermore, Su contends that Judge Nickels based his decision of acquittal on the failure of the State to produce sufficient evidence of intent, even though the State presented evidence as to all 55 counts. Thus, the State should not be able to try the issue of intent before another jury. The State responds that Su's trial on counts 41 through 55 of the indictment did not decide issues of ultimate fact, as required for application of the doctrine of collateral estoppel.

Su was charged under the same statute in each count of the indictment. The statute provides:

> Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance ... Ill. Rev.Stat. ch. 56½, ¶ 1401 (1971).

In *People v. Chua,* 156 Ill.App.3d 187, 108 Ill.Dec. 837, 509 N.E.2d 533 (1st Dist.1987), the court held that a doctor illegally prescribes drugs when he does so outside the regular course of treatment as defined in section 312(h) of the Illinois Controlled Substances Act. That section provides in part as follows:

> ... An order purporting to be a prescription issued to any individual, which is not in the regular course of professional treatment ... and which is intended to provide that individual with controlled substances sufficient to maintain that individual's or any other individual's physical or psychological addiction, habitual or customary use, dependence or diversion is not a prescription within the meaning of the Act; and the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances. Ill.Rev.Stat. ch. 56½, ¶ 1312(h) (1988).

Thus, the "intent" element that the State must prove beyond a reasonable doubt as to each count of the indictment essentially involves two separate concepts: that the physician prescribed the drug not in the course of treatment and intended the drug to maintain the eventual recipient's habit or dependence.

In this case, Judge Nickel's oral ruling of acquittal as to counts 41 through 55 included the following findings:

> In considering all of the evidence, there doesn't seem to be any issue whether Dr. Su wrote the prescriptions in question and there's no issue that the prescriptions have covered controlled substances within the meaning of the statute. Obviously, the largest and most contested issue is whether or not the Defendant issued the prescriptions in question within the course of medical care and treatment of the patients in question. If they were issued in the ordinary course of medical care and treatment, then they come within the statutory exception and there must be a finding of not guilty. On the other hand, if the prescriptions were not within the medical exception, then the Court must find the Defendant guilty. (State Court Transcript, November 2, 1987, p. 63).

Thus, it appears that here, as in *Ashe,* there was only one real issue for the trier of fact.

The distinction between this case and *Ashe,* however, lies in the conduct underlying the separate counts of the indictment. In *Ashe,* the petitioner was charged with a seven count indictment, but six of those counts arose from the same conduct. Each count simply named a different victim poker player. All six of the poker players sat at the same table during the same robbery. Here, Su is charged with 55 separate and distinct deliveries of controlled substances to different agents on different occasions. So, the question remains as to whether Judge Nickel's finding that Su did not act outside the course of ordinary medical treatment with respect to the conduct charged in counts 41 through 55 of the indictment also applies to counts 1 through

---

3. The Court notes that Su contested the issue of delivery as well at trial. Su argued that a prescription is not a "delivery" within the meaning of the statute. (State Court Transcript, November 2, 1987, pp. 28–32). That issue, however, was not factual, but legal and was determined against Su.

40. That is an issue of ultimate fact, which in the Seventh Circuit, Su must prove was necessarily resolved in his favor during the earlier trial. *U.S. v. Patterson*, 782 F.2d 68, 75 (7th Cir.1986).

Judge Nickels had the following to say about the medical records presented during the earlier trial:

I do realize that the Defendant's experts based their opinion on the Defendant's medical records. And that it is one of the State's contentions that these records were not kept in the ordinary course of the medical treatment of these people. But there's been no showing that they—that they were not made at the time he saw the agents and at the time he wrote the prescriptions ... And so—And there was no showing that these records were any different than any records of any other patient. (Transcript, November 2, 1987, pp. 64–65).

The State said the following with regard to the evidence when it presented a motion for substitution of judges to Judge McCarthy following Judge Nickels' ruling of acquittal:

Now, judge, for me to go back before Judge Nickels again, he's already determined that my evidence on those first 15 counts was insufficient. The evidence on the remaining counts would be basically the same. They would be different days and drugs prescribed, but basically the same opinions. He's already determined that that's insufficient. (Transcript, November 20, 1987, p. 5).

Judge McCarthy denied the motion and the case was transferred back to Judge Nickels. The State filed a motion for recusal before Judge Nickels. During the hearing on the motion for recusal, the following exchange occurred between the State and Judge Nickels:

MR. BARSANTI: I don't think this needs alot of argument, your Honor. Very briefly, the State's position is and my position in this matter is that the Court has heard basically all the facts in this particular case. And when we tried fifteen of the fifty-five counts which the Court found the Defendant not guilty of, the remaining forty counts, Judge, the Court heard, albeit somewhat briefer fashion than would be if we had tried those counts, but basically heard the facts of those counts.

THE COURT: What? Where did I hear the facts of those counts?

MR. BARSANTI: The first forty counts, we put those on in the trial to show the Defendant's intent and motive.

THE COURT: So in other words you're saying that the evidence to prove the first forty has already been heard as a matter of what, a method—

MR. BARSANTI: That has been presented. Those cases and those facts weren't brought before the Court for the Court to rule on.

THE COURT: Okay.

MR. BARSANTI: And I think because the Court has heard all the evidence and basically determined that the Defendant is not guilty, that the Court can not be completely objective about the remaining forty counts. (State Court Transcript, January 15, 1988, p. 5).

The State later during the same hearing stated the following:

Now, this Court very objectively speaking has decided that the intent that we attempted to show in the first fifteen counts when we tried them, the evidence of intent we showed in those counts was insufficient. And you have decided that already. Now, when we try these other forty counts, it appears that the State cannot have a completely blank slate going into someone to determine whether or not there was sufficient intent to convict. And that's my—the only problem I have and the only reason that I think you should recuse yourself. What I think the remaining forty counts deserve is someone who's going to determine the intent issue starting from the beginning and not with a background where it's been determined that the intent is—the intent evidence was insufficient to sustain the State's burden. (State Court Transcript, January 15, 1988, p. 11).

What the State failed to realize is that what it requested is exactly what the Double Jeopardy Clause was designed to prevent. The State could not have a "completely blank slate" for a second trial, because Judge Nickels had already determined, after hearing the State's evidence as to all fifty-five counts, the ultimate fact that Su did not possess the requisite intent to violate the statute.

### III.  CONCLUSION

Accordingly, Su's motion for judgment on the pleadings and petition for writ of habeas corpus are granted.