

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1547-10

### Ex parte DUSTIN DOAN, Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.

The Court makes a convincing argument that a probation-revocation proceeding is not an administrative hearing. But it fails to say what that proposition has to do with whether Travis County and Brazos County are the same party. In my opinion, this gap in the argument is fatal to the Court's ultimate holding.

The question in this case is whether the Travis County Attorney is bound in a criminal prosecution by what happened in a probation-revocation proceeding that was prosecuted by the Brazos County Attorney. The court of appeals relied upon state-law cases for the proposition that the two governmental entities are not the same party, while appellant relies upon a federal double-

jeopardy case[1] to show that they should be treated as the same party. The Court concedes that double-jeopardy principles do not apply in this case,[2] but it holds that the two governmental entities are nevertheless the same party under state law. In so holding, the Court sidesteps appellant's argument, overrules, *sub silentio*, the holding in *Ex parte Tarver* that double-jeopardy applies to probation revocations, and incorrectly analyzes the state-law issue.

I agree that the Double Jeopardy Clause does not apply in cases such as the one before us, but so holding requires that we overrule *Tarver*. We should not overrule precedent by implication, without any explanation, so I would do so expressly, for the reasons set forth. I would also hold that the two prosecuting authorities in the present case are not the same parties under state law.

## I. FEDERAL VERSUS STATE LAW

The Double Jeopardy Clause of the United States Constitution does not bar successive prosecutions brought by different sovereigns.[3] Conversely, the Double Jeopardy Clause may bar successive prosecutions that are brought by the same sovereign.[4] Whether two government entities are different sovereigns depends upon whether they "draw their authority to punish the offender from distinct sources of power."[5] By "distinct sources of power," the Supreme Court means that the sources of power are distinct when viewed from the perspective of the United States Constitution:

---

[1] *Waller v. Florida*, 397 U.S. 387 (1970).

[2] Court's op. at 13 ("This difference is sufficient to allow this case to escape the narrow grasp of the Double Jeopardy clause").

[3] *Heath v. Alabama*, 474 U.S. 82, 88-93 (1985).

[4] *Waller*, 397 U.S. at 393-95.

[5] *Heath*, 474 U.S. at 88.

The federal government,[6] the various states,[7] and Indian tribes are separate sovereigns from each other,[8] but cities are not separate sovereigns from the states in which they exist.[9] How a state constitution distributes power to the governing bodies of the state is irrelevant; those governing bodies are all organs of the state for federal double-jeopardy purposes.[10]

But the distribution of power across state government can be taken into account when considering purely state-law claims.[11] To the extent that a particular collateral-estoppel claim derives solely from state law, separate state governmental entities can be separate parties for the purpose of deciding whether a subsequent prosecution is barred.[12] In *Brabson*, for instance, we found that DPS was not the same party as the Dallas County District Attorney for state-law collateral-estoppel purposes.[13]

---

[6] *Id.* at 89.

[7] *Id.* at 92-93.

[8] *Id.* at 89, 92-93 (federal government and states); *United States v. Wheeler*, 435 U.S. 313 (1978) (Indian tribes).

[9] *Wheeler*, 435 U.S. at 320 ("[Cities are not sovereign entities . . . . Any power it has to define and punish crimes exists only because such power has been granted by the State."); *Waller*, 397 U.S. at 393-95.

[10] *See Waller*, 397 U.S. at 393-95.

[11] *See Reynolds*, 4 S.W.3d 13, 16-17 (Tex. Crim. App. 1999) (adopting Judge Womack's concurring opinion in *Brabson*); *Brabson v. State*, 976 S.W.2d 182, 186-88 (Tex. Crim. App. 1998) (Womack, J., concurring) (decentralized nature of Texas state government supports treating the DPS and the local prosecutor as different parties).

[12] *Reynolds*, 4 S.W.3d at 19; *Brabson*, 976 S.W.2d at 183 n.2, 184 (Court's op.) (In a case that "does not implicate the rule of collateral estoppel as 'embodied in the Fifth Amendment guarantee against double jeopardy,'" DPS and local prosecutor are not the same party for collateral-estoppel purposes.).

[13] 976 S.W.3d at 184.

## II. DOUBLE JEOPARDY

The double-jeopardy question turns upon the continued vitality of *Ex parte Tarver*, where this Court held that if a defendant prevails on a motion to revoke probation, collateral estoppel could bar the later prosecution of an offense that was alleged in the motion to revoke.[14]  We held that collateral estoppel applied as a matter of federal constitutional double-jeopardy law.[15]  As we shall see below, that holding is out of step with the vast majority of jurisdictions that have addressed the issue.  And while our trial-type procedures may distinguish our probation-revocation proceedings from most other jurisdictions, the applicability of double-jeopardy protections turns, not upon the nature of the proceeding, but upon the potential *result* of the proceeding.[16]  As will be explained, the potential result of probation-revocation proceedings is not a result that implicates double jeopardy.

### A. We Are Out of Step with Other Jurisdictions

The vast majority of jurisdictions that have addressed the situation in which a defendant tries to use a prior favorable determination from a probation-revocation proceeding at a later criminal prosecution have held that double-jeopardy protections were not implicated and collateral estoppel did not apply.[17]  This is the view of the Fifth and Sixth Circuits;[18] the District of Columbia Court of

---

[14]  725 S.W.2d 195, 197-200, 199 n.4 (Tex. Crim. App. 1986).

[15]  *Id.* (discussing issue in light of *Ashe v. Swenson*, 397 U.S. 436 (1970); *see Reynolds*, 4 S.W.3d at 20 n.17, 21 n.18 (observing that *Tarver* decided the collateral-estoppel issue as a matter of federal constitutional double-jeopardy law).

[16]  *Reynolds*, 4 S.W.3d at 20 & n.16.

[17]  *See* this opinion, *post*.

[18]  *Stringer v. Williams*, 161 F.3d 259, 262-63 (5th Cir. 1998); *Showery v. Samaniego*, 814 F.2d 200, 201-04 (5th Cir. 1987); *United States v. Miller*, 797 F.2d 336, 339-41 (6th Cir. 1986).

Appeals;[19] the courts of last resort in Arizona, California, Connecticut, Florida, Maine, Massachusetts, Mississippi, New York, Rhode Island, and Vermont;[20] and intermediate appellate courts in Georgia, Michigan, and Wisconsin.[21] Moreover, in declining to apply collateral estoppel in the State's favor, the Supreme Court of Colorado relied upon authorities that declined to apply collateral estoppel in the defendant's favor.[22] And without specifically addressing the collateral-estoppel context, courts of last resort in Kentucky, Montana, and Nebraska have found that double-jeopardy protections are not implicated by probation-revocation proceedings.[23] The Supreme Court of Vermont characterized the position that "double jeopardy does not attach at a revocation hearing

---

[19] *Jones v. United States*, 669 A.2d 724, 727 (D.C. App. 1995).

[20] *State v. Williams*, 131 Ariz. 211, 212-13, 639 P.2d 1036, 1037-38 (1982); *Lucido v. Superior Court of Mendocino County*, 51 Cal. 3d 335, 342-52, 795 P.2d 1223, 1226-33 (1990); *State v. McDowell*, 242 Conn. 648, 651-57, 699 A.2d 987, 988-91 (1997); *Green v. State*, 463 So. 2d 1139, 1139-40 (Fla. 1985); *State v. Reed*, 686 A.2d 1067, 1068-69 (Me. 1996); *Krochta v. Commonwealth*, 429 Mass. 711, 713-20, 711 N.E.2d 142, 144-48 (1999); *State v. Oliver*, 856 So. 2d 328, 330-32 (Miss. 2003); *State v. Hilton*, 95 N.Y.2d 950, 951-52, 745 N.E.2d 381, 381-82 (Ct. App. 2000); *Maisonet v. Merola*, 69 N.Y.2d 965, 966, 509 N.E.2d 341, 341 (Ct. App. 1987); *State v. Gautier*, 871 A.2d 347, 354-61 (R.I. 2005); *State v. Brunet*, 174 Vt. 135, 138-44, 806 A.2d 1007, 1010-14 (2002).

[21] *Coney v. State*, 304 Ga. App. 346, 347, 696 S.E.2d 73, 74 (4th Div. 2010); *State v. Jones*, 196 Ga. App. 896, 896-98, 397 S.E.2d 209, 210-11 (1990); *Johnson v. State*, 142 Ga. App. 124, 127, 235 S.E.2d 550, 552-53 (1997); *State v. Johnson*, 191 Mich. App. 222, 223-27, 477 N.W.2d 426, 427-29 (1991); *State v. Terry*, 239 Wis. 2d 519, 525-32, 620 N.W.2d 217, 219-22 (Wis. App. 2000, review denied). *See also State v. Kaczmarek*, 464 Mich. 478, 482-83, 628 N.W.2d 484, 487 (2001) (Michigan Supreme Court favorably citing *Johnson* from Michigan court of appeals for proposition that "violation of probation is not a crime, and a ruling that probation has been violated is not a new conviction").

[22] *Byrd v. State*, 58 P.3d 50, 57-59 (Colo. 2002).

[23] *Thompson v. Commonwealth*, 147 S.W.3d 22, 53-54 (Ky. 2004); *State v. Haagenson*, 356 Mont. 177, 182-86, 232 P.3d 367, 371-74 (2010); *State v. Rebecca B.*, 280 Neb. 137, 143-44, 783 N.W.2d 783, 788-89 (2010)

to bar a trial of the new criminal charges" as "universally acknowledged,"[24] and said that most courts

have also concluded that collateral estoppel does not apply.[25]

Outside of Texas, the cases that take the position that a prior determination in a probation-

revocation proceeding can have collateral-estoppel consequences in a subsequent criminal

prosecution are sparse, and each of those cases has at least one complicating factor that may

undermine its vitality or its relevance to our discussion. The Supreme Courts of Illinois and Oregon

have held that, in theory, a probation-revocation proceeding could have collateral-estoppel

consequences, but did not find collateral estoppel to apply in the cases before them.[26] In addition,

the Illinois court's pronouncement regarding collateral estoppel was based upon both *Ashe* and the

court's earlier decision in *People v. Grayson*,[27] but *Grayson* has since been overruled, at least in

part.[28] An Illinois court of appeals has applied collateral estoppel to the fact pattern before us, but

it too, relied upon the later-overruled *Grayson* case.[29] And the Oregon Supreme Court case seems

---

[24] *Brunet*, 174 Vt. at 141, 806 A.2d at 1011.

[25] *Id.*, 174 Vt. at 142, 806 A.2d at 1012.

[26] *People v. Bone*, 82 Ill. 2d 282, 286-89, 412 N.E.2d 444, 446-47 (1980); *see id.*, 82 Ill. 2d at 288, 412 N.E.2d at 447; *State v. Donovan*, 305 Ore. 332, 334-43, 751 P.2d 1109, 1110-15 (1988); *see id.*, 305 Ore. at 343, 751 P.2d at 1115.

[27] *Bone*, 82 Ill. 2d at 288, 412 N.E.2d at 447 (citing *People v. Grayson*, 58 Ill. 2d 260, 319 N.E.2d 43 (1974)).

[28] *People v. Colon*, 225 Ill. 2d 125, 145-55, 866 N.E.2d 207, 219-24 (2007). *Grayson*, which held that an acquittal in a criminal prosecution could be a basis for barring a later attempt to revoke probation despite the lower burden of proof in the latter proceeding, 58 Ill. 2d at 264-65, 319 N.E.2d at 45-46, is inconsistent with *Dowling v. United States*, 493 U.S. 342 (1990).

[29] *People v. Kondo*, 51 Ill. App. 3d 874, 876-79, 366 N.E.2d 990, 992-93 (5th Dist. 1977). In deciding whether collateral estoppel should apply to the probation-revocation fact situation, *Lucido* found *Kondo* to provide little guidance due to its reliance on *Grayson*. *Lucido*, 51 Cal. 3d

to be based upon statute, with no mention in the decision of *Ashe* or of the constitutional guarantee against double jeopardy, except for the bare citation of a law review article entitled "Criminal Law, Double Jeopardy and Res Judicata."[30]  The Oregon Court of Appeals has applied collateral estoppel to the fact pattern before us, but it did so expressly as a matter of state statutory law and stated that the case did "not turn on the application of the constitutional standard of double jeopardy (or its ingredient, collateral estoppel as a principal of constitutional law)."[31]  In a plurality opinion, the Supreme Court of Pennsylvania gave collateral-estoppel effect to an evidentiary-admissibility ruling from a prior revocation hearing that was in the *State's* favor.[32]  Inferring a double-jeopardy rule from a plurality opinion in the State's favor would seem difficult enough, but in a later case, the Pennsylvania court said, "Probation is given by grace, not by right.  To hold the Double Jeopardy Clause is somehow implicated at a VOP [violation of probation] hearing would elevate something of grace to the status of constitutional dimension."[33]

In holding that double jeopardy is not implicated by a favorable finding in a probation-revocation proceeding, many courts have explained that jeopardy does not attach to probation-

---

at 346 n.8, 795 P.2d at 1228 n.8.

[30]  *See Donovan*, *passim*, 337 (citing Lugar, *Criminal Law, Double Jeopardy and Res Judicata*, 39 Iowa L. Rev. 317, 332-33 (1954)).

[31]  *State v. Bradley*, 51 Ore. App. 569, 572, 626 P.2d 403, 405 (1981).

[32]  *Commonwealth v. Holder*, 569 Pa. 474, 480-84, 805 A.2d 499, 503-05 (2002) (plurality op.).

[33]  *Commonwealth v. Mullins*, 591 Pa. 341, 349, 918 A.2d 82, 86 (2007).  In *State v. Chase*, 588 A.2d 120 (R.I. 1991), *overruled by*, *State v. Gautier*, 871 A.2d 347 (R.I. 2005), the Supreme Court of Rhode Island applied common-law collateral estoppel where the defendant sought to bar criminal prosecution after prevailing in a probation-revocation hearing. *Id.* at 122-24.  *Chase* was later overruled by *Gautier*.  *Gautier*, 871 A.2d at 354-60.

revocation proceedings because the purpose of such proceedings is not to punish a criminal defendant for violating the law but to take into custody a person who has shown himself to be unsuitable for probation.[34] Distinguishing *Breed*, many courts have held that probation-revocation proceedings are not "essentially criminal" for double-jeopardy purposes.[35] A probation-revocation proceeding does not place the defendant in jeopardy because a revocation hearing is not a criminal prosecution; that is, it is not a proceeding that could result in a conviction.[36] Further, courts have held that a revocation hearing is simply a continuation of the earlier prosecution and so no jeopardy

---

[34] *Stringer*, 161 F.3d at 262 (revocation proceedings "are not designed to punish a criminal defendant for violation of a criminal law"); *Showery*, 814 F.2d at 202-03 (same, and purpose is "ultimately to determine whether the parolee or probationer is a good risk"); *Miller*, 797 F.2d at 341 (purpose of revocation hearing was to establish that probationer "was a poor probation risk"); *Jones*, 669 A.2d at 727 ("jeopardy does not attach in 'parole, probation, or bond revocation hearings, because these proceedings are not designed to punish a defendant for a violation of a criminal law"); *Lucido*, 51 Cal. 3d at 343 n.5, 795 P.2d at 1226 n.5 (double-jeopardy "aspect of collateral estoppel is not raised in this case because jeopardy does not attach in probation-revocation hearings, which do not constitute a 'trial' on a new criminal charge, result in 'conviction,' or integrally relate to 'enforcement' of the criminal laws"); *McDowell*, 242 Conn. at 653-54, 699 A.2d at 989 ("The purpose of a revocation hearing is to determine whether the defendant is a good risk for continued probation and not to punish him for a new criminal offense."); *Oliver*, 856 So. 2d at 332 (issues in revocation hearing and criminal prosecution are "very different"); *Haagenson*, 356 Mont. at 183, 232 P.3d at 372 (revocation proceeding is a "purely administrative action designed to determine whether a parolee or probationer has violated the conditions of his parole or probation, not a proceeding designed to punish a criminal defendant for a violation of a criminal law"); *Gautier*, 871 A.2d at 361 ("these proceedings are not designed to punish criminal defendants for violation of a criminal law") (brackets omitted); *Brunet*, 174 Vt. at 140, 806 A.2d at 1011 ("The goal of a revocation hearing is not to decide guilt or innocence, but to determine whether the defendant remains a good risk for probation.").

[35] *Showery*, 814 F.2d at 202; *McDowell*, 242 Conn. at 653, 699 A.2d at 989; *Brunet*, 174 Vt. at 141, 806 A.2d at 1011. *See also Lucido*, 51 Cal. 3d at 343 n.5, 795 P.2d at 1226 n.5.

[36] *Miller*, 797 F.2d at 340; *Lucido*, 51 Cal. 3d at 343 n.5, 795 P.2d at 1226 n.5; *Coney*, 304 Ga. App. at 347, 696 S.E.2d at 74; *Thompson*, 147 S.W.3d at 54 & n.109; *Reed*, 686 A.2d at 1068; *Krochta*, 429 Mass. at 713, 711 N.E.2d at 144; *Johnson*, 191 Mich. App. at 226-27, 477 N.W.2d at 429.

attaches on a new offense that is made the basis of revocation.[37]  Some courts have also held that a probation-revocation hearing is not a "valid and final judgment" for collateral-estoppel purposes because it is not a final determination of the probationer's involvement in the new criminal activities.[38]

### B. Trial-Like Nature of Probation-Revocation Proceedings Does Not Mean those Proceedings Implicate Jeopardy

What is important to note about the jurisprudence of other jurisdictions is that there are generally two holdings: (1) the proceedings at issue do not implicate the collateral-estoppel component of the Double Jeopardy Clause, and (2) collateral estoppel should not apply as a matter of state law for various policy reasons.  The procedural differences between probation-revocation procedures in Texas and such procedures in other jurisdictions *may* be a reason to reject the second holding regarding the nonapplicability of state-law collateral estoppel, but those differences have nothing to do with the applicability of double jeopardy.

Double-jeopardy protections apply only if jeopardy attaches.[39]  By its terms, the Fifth Amendment protection against double jeopardy applies only to an "offence," and so jeopardy must attach to a particular offense.[40]  But what offense was appellant in jeopardy for at the probation-

---

[37] *Jones*, 669 A.2d at 727; *Green*, 463 So. 2d at 1140; *Reed*, 686 A.2d at 1068; *Krochta*, 429 Mass. at 713-14, 711 N.E.2d at 144-45; *Haagenson*, 356 Mont. at 183, 232 P.3d at 372; *Rebecca B.*, 280 Neb. at 144, 783 N.W.2d at 789; *Gautier*, 871 A.2d at 361; *Brunet*, 174 Vt. at 140, 806 A.2d at 1011.

[38] *Miller*, 797 F.2d at 341; *Williams*, 131 Ariz. at 213, 639 P.2d at 1038.

[39] *York v. State*, 342 S.W.3d 528, 551 & n.151 (Tex. Crim. App. 2011).

[40] U.S. CONST. amend 5 ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); *Tarver*, 725 S.W.2d at 197 ("The fact that applicant was twice placed in risk of punishment, however, does not mean that he had been subjected to double jeopardy.

revocation proceedings? He had already been convicted of the offense for which he was on probation. For that unreversed conviction, jeopardy had terminated.[41] And the *Tarver* court readily acknowledged that probation-revocation proceedings relate to the original offense, not the new offense that is the basis for revocation.[42] *Tarver*'s own pronouncement in this regard should have been the seeds of its own destruction: "In the instant case, if the district court had revoked applicant's probation, the punishment he received would have been for the offense of which he was originally convicted, possession of cocaine. In the county criminal court at law, applicant faces the risk of being punished for the subsequent offense, assault. He is not, therefore, being twice placed in jeopardy for the *same* offense."[43]

But *Tarver* made the following statement, which is contrary to how we now view the collateral-estoppel component of the double-jeopardy guarantee: "We note that one need not be twice placed in jeopardy of criminal punishment in order for collateral estoppel to apply."[44] That statement conflicts with our current understanding of double-jeopardy law, expressed in *York*: "If jeopardy has not attached, then no aspect of double jeopardy, including its collateral-estoppel component, is

---

The double jeopardy proscription of the Fifth Amendment to the United States Constitution protects an accused against being twice placed in jeopardy of punishment for 'the same offence.'").

[41] *See Richardson v. United States*, 468 U.S. 317 (1984) ("The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree."); *id.* (Brennan, J., dissenting) (Apparently, under the Court's approach, only an actual judgment of acquittal, or an unreversed conviction, would 'terminate' jeopardy and thereby bar retrial.").

[42] *Tarver*, 725 S.W.2d at 197.

[43] *Id.* (emphasis in original).

[44] *Id.* at 197 n.3.

implicated."[45]

The fact that there are no double-jeopardy consequences if probation is revoked means that jeopardy does not attach to revocation proceedings. The *Ashe* case, which originally applied "collateral estoppel" as a component of the Fifth Amendment double-jeopardy guarantee, presents a useful contrast to the probation-revocation scenario.[46] The defendant in *Ashe* was charged with robbing one of six players at a poker game.[47] His acquittal of robbing one poker player on the basis that the defendant was not one of the robbers had the double-jeopardy effect, under the doctrine of collateral estoppel, of precluding a subsequent prosecution for robbery of any of the other victims.[48] In *Ashe*, the defendant was in jeopardy in the first prosecution.

In *Ashe*, certain double-jeopardy consequences would have occurred if the defendant had been convicted. Although a conviction for robbing the first poker player would not have barred the State from prosecuting the robberies of poker players two through six, the State would have been barred from prosecuting the defendant again for robbing the first poker player. But if a defendant's probation is revoked, the State is not barred from prosecuting the offense that was the basis for revocation.[49] "It is totally inconsistent to argue," the Sixth Circuit explained, "that double jeopardy does not attach to a probation-revocation hearing if the government 'wins,' but only attaches if the government 'loses.' Either the defendant is placed in jeopardy when he appears before a judge at

---

[45] 342 S.W.3d at 551 & n.151 (citing cases).

[46] 397 U.S. at 445-46.

[47] *Id.* at 438.

[48] *Id.* at 445-46.

[49] *Tarver*, 725 S.W.2d at 197; *Miller*, 797 F.2d at 341.

the probation-revocation hearing, or he is not."[50] And if a probation-revocation proceeding does not implicate double-jeopardy protections, then the double-jeopardy variant of collateral estoppel cannot apply.[51]

There is no middle ground that can be taken in this area of the law. Jeopardy never "kind of" attaches in a case. Either jeopardy attaches at probation-revocation proceedings or it does not. Most jurisdictions that have addressed the issue conclude that it does not. That conclusion follows naturally from the fact that there is no offense at issue in a probation-revocation proceeding to which jeopardy could attach: jeopardy attaches neither to the original offense, nor to the new charge.

The Fifth Circuit has twice suggested that the holding in *Tarver* was a state-law rule,[52] perhaps because it seemed unfathomable that we would arrive at such a holding as a matter of federal constitutional law. We should explicitly reject *Tarver*'s internally inconsistent reasoning and follow the prevailing view that probation-revocation proceedings do not implicate double-jeopardy protections.

## II. STATE LAW

### A. *Res Judicata* or Collateral Estoppel?

---

[50] *Miller*, 797 F.2d at 341.

[51] *Showery*, 814 F.2d at 202; *Miller*, 797 F.2d at 341 (because the "double jeopardy protection does not attach at a probation revocation hearing, *Ashe*, which is a double jeopardy case, provides no support for the defendant"); *Krochta*, 429 Mass. at 713, 711 N.E.2d at 144 ("Without a first incidence of jeopardy, the probationer cannot be in 'double' jeopardy at a subsequent criminal trial.").

[52] *Stringer*, 161 F.3d at 263; *Showery*, 814 F.2d at 204. *See also Reynolds*, 4 S.W.3d at 20 n.17 (discussing the erroneous characterization of *Tarver* in *Showery*).

The Court characterizes the issue in the present case as one of "*res judicata*,"[53] despite the fact that the court of appeals and the parties have characterized the issue as "collateral estoppel."[54] In both civil and criminal cases, "*res judicata*" is sometimes used as a broad term to describe both claim preclusion and issue preclusion,[55] but at other times, the term is used in a more narrow sense to refer only to claim preclusion, leaving the concept of issue preclusion to be described as "collateral estoppel."[56] The Court does not say whether it is using the term *res judicata* in the broad sense or the narrow sense. And so I cannot determine whether it believes that the question before it is one of claim preclusion (*res judicata* in the narrow sense) or issue preclusion (collateral estoppel, which is included within *res judicata* in the broad sense). The difference is important because, unlike the doctrine of claim preclusion, the doctrine of issue preclusion may carry limitations in criminal cases that do not exist in civil cases.[57] The relaxation of the traditional principles of collateral estoppel in criminal cases was one reason we concluded in *Reynolds* that it was appropriate to hold that two governmental entities were not the same party for the type of case that was before us.[58]

---

[53] Court's op. at 1, 4, 5, 10, 11, 14.

[54] *See Ex parte Doan*, 322 S.W.3d 896, 898 (Tex. Crim. App. 2010) ("The sole issue in this appeal is whether the doctrine of *collateral estoppel* applies to bar the Travis County Attorney from prosecuting Doan for theft") (emphasis added).

[55] *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998); *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 77 n.1 (1984). *See also York*, 342 S.W.3d at 553 (Womack, J., concurring).

[56] *Migra*, 465 U.S. at 77 n.1.

[57] *York*, 342 S.W.3d at 549 (discussing *Standefer v. United States*, 447 U.S. 10 (1980)).

[58] 4 S.W.3d at 18.

And the question before us is one of issue preclusion, not claim preclusion. Whether a person should be convicted of a crime and whether his probation should be revoked are separate claims. On the other hand, whether a crime was committed is merely an issue that might arise in a probation revocation context. So, here, we are concerned with collateral estoppel.

## B. Collateral Estoppel under State Law

The question here is whether, under *Brabson* and *Reynolds*, the Brazos County Attorney and the Travis County Attorney qualify as separate parties under state law. Judge Womack explained in his concurring opinion in *Brabson* that the distribution of power to prosecute crimes in Texas is decentralized:

> [T]he State of Texas . . . has given its authority to prosecute DWI cases to more than three hundred independently elected prosecutors, each of whom exercises authority in an area of the state no larger than a judicial district. This model differs from the federal model . . . because there is no central prosecuting authority.[59]

It was the decentralized nature of power that led Judge Womack to conclude that there was no privity between DPS and the local prosecutor.[60] The same reasoning applies to prosecutors from different counties. The Travis County Attorney has no control over how the Brazos County Attorney decides to proceed, and in fact the Travis County Attorney had no authority with respect to the Brazos County drug offense in this case.

The Court engages in a lengthy discussion about the trial-type proceedings required for probation revocations in Texas and how the label of "administrative" is inaccurate.[61] The Court then

---

[59] *Brabson*, 976 S.W.3d at 187 (Womack, J., concurring).

[60] *Id.*

[61] Court's op. at 5-12.

jumps to the conclusion that the Travis County Attorney and the Brazos County Attorney are the same party. But the Court does not say, and it is not apparent, how the nature of the proceedings has any bearing at all on whether these county attorneys are the same party.

And even if collateral estoppel did apply generally to probation-revocation proceedings,[62] that would, at most, mean that the Travis County attorney would be estopped if he had prosecuted both proceedings. If the Travis County attorney had control over both proceedings, it could be argued that he should be held accountable for any failure of proof in the first proceeding. But as explained above, the Travis County Attorney had no control over the Brazos County Attorney's prosecution of the probation revocation.

The Court acknowledges that the state-law question of whether the two County Attorneys are the same party is "whether or not in the earlier litigation the representative of the government had authority to represent its interests in a final adjudication on the merits."[63] After Judge Womack posed that question in his *Brabson* concurrence, he answered it by saying, "The Department of Public Safety does not have such general authority to represent the interests of prosecutors."[64] In the present case the Court says that the "Brazos County Attorney had the authority to litigate the matter to a final adjudication."[65] But that is not the *Brabson* question. The *Brabson* question, as applied to the facts here, is whether the Brazos County Attorney had the authority to represent the interests

---

[62] *But see Guajardo v. State*, 109 S.W.3d 456, 468-69 (Tex. Crim. App. 2003) (Hervey, J., concurring) (arguing that collateral estoppel does not exist in criminal cases outside the double-jeopardy context).

[63] Court's op. at 5 (quoting *Brabson*, 976 S.W.2d at 188 (Womack, J., concurring)

[64] *Brabson*, 976 S.W.2d at 188 (Womack, J., concurring).

[65] Court's op. at 13.

of the Travis County Attorney. And the answer to that question is indisputably "no."

As explained above, the Travis County Attorney had no authority over the probation-revocation proceedings. Likewise, the Brazos County Attorney had no authority to prosecute the theft offense. And here is where the difference between claim preclusion and issue preclusion becomes crucial. If we were truly concerned with the same claim—if two different prosecuting authorities had concurrent jurisdiction over an offense—then principles of dominant jurisdiction would come into play, typically triggered by the first to file, and a prosecuting authority that failed to file first would essentially yield its authority in the matter.[66] But when the matter is simply the same *issue*, then one prosecuting authority is powerless with respect to how the other prosecuting authority litigates an issue. A defendant's guilt of an offense can be litigated in myriad proceedings other than the trial for that offense. For instance, in addition to probation-revocation proceedings, guilt can be litigated in the punishment phase of another trial, or in a wrongful-death case, or in civil commitment proceedings. The fact that the commission of a crime may be an important fact in a collateral proceeding in another county does not mean that the prosecuting authority in this other county represents the interests of the prosecuting authority for the county in which the crime was committed.

Moreover, the citizens of Travis County have an interest in punishing people who commit crimes within the county, and they have a right to expect that their *elected* representative—in this case the Travis County Attorney—will have the opportunity to prosecute that crime. They did not elect the County Attorney in Brazos County. If the Brazos County Attorney mishandles a case, the

---

[66] *See Ringer v. State*, 135 Tex. Crim. 573, 575-76 (1938) ("It is a well recognized rule in this State that a court which first acquires jurisdiction of the person and subject matter of the suit, retains it to the exclusion of any other court of co-ordinate jurisdiction.").

Travis County voters cannot hold him accountable. Because the Brazos County Attorney did not have the authority to represent the interests of the Travis County Attorney, the two County Attorneys are not the same party under State law. And because the Travis County Attorney and the Brazos County Attorney are different parties under state law, collateral estoppel does not apply as a matter of state law.

### C. Conclusion

The Brazos and Travis County Attorneys serve the same sovereign under federal double-jeopardy law, but double-jeopardy protections are not implicated in this case because jeopardy does not attach at probation-revocation proceedings. And under *Brabson* and *Reynolds*, these separate prosecuting authorities are different parties under state law because neither has control over the actions of the other. I therefore respectfully dissent.

Delivered: June 20, 2012
Publish